881 P.2d 18

AA OILFIELD SERVICE, INC., B & E, Inc., R.A. Caudle, Inc., Chaparral Service Inc., Gandy Corporation, General Petroleum, Inc., Jim's Water Service, Inc., Kenna Water Sales, Kenneth Tank Service, Inc., Sonny's Oilfield Service, Inc., W.M. "Billy" Walker, Inc., and XL Transportation Company, Plaintiffs–Appellants,

v.

NEW MEXICO STATE CORPORATION COMMISSION, Eric P. Serna, Chairman, and Louis E. Gallegos, Commissioner, Defendants–Appellees,

and

Broom Transportation, Inc., and Hughes Services, Inc., Intervenors–Appellees.

No. 20771.

Supreme Court of New Mexico.

Aug. 17, 1994.

Heidel, Samberson & Newell, C. Gene Samberson, Michael T. Newell, Lewis C. Cox, III, Lovington, for appellants.

Tom Udall, Atty. Gen., Avelino A. Gutierrez, Sp. Asst. Atty. Gen., Santa Fe, for appellees Corp. Comm.

Campbell, Carr, Berge and Sheridan, P.A., William P. Slattery, David B. Lawrenz, Santa Fe, for appellees Broom & Hughes.

## OPINION

RANSOM, Justice.

Broom Transportation, Inc. and Hughes Services, Inc. jointly petitioned the State Corporation Commission for the transfer to Hughes of Broom's certificate of public convenience and necessity for the transportation of water and oil field supplies and equipment. AA Oilfield Service, Inc. and other common carriers (collectively, "AA Oilfield") opposed this transfer and petitioned the Commission to revoke or cancel Broom's certificate. The Commission granted the Broom–Hughes petition for transfer and denied the AA Oilfield petition for revocation. The district court affirmed the Commission's order and AA Oilfield appeals pursuant to NMSA 1978, 65–2–120(G) (Repl.Pamp.1990) and SCRA 1986, 12–102(A)(6) (Repl.Pamp.1992). We affirm the district court and uphold the Commission's order.

*Standard of Review.* On appeal from a district court order affirming an administrative action this Court reviews the whole record to see if the agency decision is supported by substantial evidence. *Duke City Lumber Co. v. New Mexico Envtl. Improvement Bd.,* 101 N.M. 291, 294, 681 P.2d 717, 720 (1984). We view the evidence in a light most favorable to the agency decision but do not totally disregard contravening evidence. *National Council on Compensation Ins. v. New Mexico State Corp.*

*Comm'n,* 107 N.M. 278, 282, 756 P.2d 558, 562 (1988). We will uphold the agency decision so long as the evidence in the record satisfies us that the agency decision is reasonable. *Santa Fe Exploration Co. v. Oil Conservation Comm'n,* 114 N.M. 103, 114, 835 P.2d 819, 830 (1992).

*Facts and proceedings.* In August 1982 Broom obtained a certificate of public convenience and necessity under the New Mexico Motor Carrier Act, NMSA 1978, §§ 65–2–80 to –127 (Repl.Pamp.1990 & Cum.Supp.1993). The certificate originally authorized the transportation of water in four southeastern New Mexico counties over irregular routes and under non-scheduled service ("wet authority") and was amended in October 1983 to authorize transportation of oil field equipment and supplies ("dry authority"). Broom operated under the certificate until April 1985 when it ceased using its dry authority. In July 1985 Linda Broom, daughter of the company's late owner-operator, determined that the dry authority should be sold because of financial losses, and in August 1985 Broom's attorney wrote to the Commission requesting that the dry authority be voluntarily suspended while Broom attempted to transfer that portion of its certificate.

On September 6, 1985, without a hearing or notice to any other certificate holders, the Commission ordered the certificate suspended while Broom attempted to transfer it. Upon transfer or written request by Broom, the certificate would regain active status. Broom attempted to transfer the certificate in October 1985, but the Commission denied the transfer because it found the proposed transferee unfit. In April 1986, upon Broom's request, the Commission issued a second order continuing the voluntary suspension. In the Fall of 1986 Frank Smith, the Commission's Director of Transportation, advised Broom that as long as it continued to attempt to transfer the certificate, there was no time limitation on the suspension.

At the end of April 1986 Broom last provided wet services to the public. By the end of December 1986 it had sold all its tractors and had terminated all its employees. In January 1987 Broom filed a petition to transfer the entire certificate (both wet and dry authorities). In March 1987, before the Commission had acted on the January 1987 application, Broom sent its first request for voluntary suspension of the entire certificate. The Commission never took action on this request because Smith never put it before the Commission. In April 1988 Broom withdrew the January 1987 petition to transfer because the deal with the proposed transferee fell through.

Broom again attempted to transfer the certificate in August 1987. In August 1988 the Commission denied the August 1987 request because it found the proposed transferee, Gold Star Services, Inc., to be unfit. This finding was based, in part, on the Commission's determination that Gold Star had allowed Broom's dry authority to lie dormant. In December 1988 Broom's counsel sent a second letter requesting that the entire certificate be suspended; however, the Commission again took no formal action on the request because Smith did not present the request to the Commission. He believed that no further Commission action was necessary to suspend the entire certificate or protect its viability as long as Broom was attempting to transfer it, and he informed Broom of this belief on at least two occasions.

Finally, in March 1989 Broom applied to transfer its certificate to Hughes. A hearing was held in September 1989 at which AA Oilfield opposed the transfer. AA Oilfield had filed a petition to revoke or cancel Broom's certificate and that petition was considered during the September proceedings. Smith testified at the hearing that voluntary suspensions had been allowed for a long period of time, that he never placed a time limitation on Broom's suspension, and that the Commission had approved and ratified his actions. On March 6, 1990, the Commission issued an order granting the petition for transfer and denying the petition to revoke. Its ruling apparently was predicated on the conclusion that a voluntary suspension of a certificate, pending attempts to transfer, legally could be substituted for the statutorily-provided requirement of reasonably continuous service, and that equitable principles applied such that the Commission was estopped from finding that Broom had not provided

reasonably continuous service. AA Oilfield appealed the Commission's order to the district court, and on July 1, 1992, the district court affirmed.

■ *The Commission has authority to grant voluntary suspensions.* Although the Commission has broad authority, that authority is not unlimited. The Commission must exercise its authority as "provided by law," N.M. Const. art. XI, § 7, meaning it must comply with its constitutional mandate, the provisions of the Motor Carrier Act, and existing Commission rules and regulations. *E.g., General Tel. Co. v. New Mexico State Corp. Comm'n (In re Gen. Tel. Co.),* 98 N.M. 749, 755, 652 P.2d 1200, 1206 (1982); *Mountain States Tel. & Tel. Co. v. New Mexico State Corp. Comm'n,* 90 N.M. 325, 331, 563 P.2d 588, 594 (1977).

■ Neither the Motor Carrier Act nor any written rule or regulation of the Commission expressly empowers it to grant a voluntary suspension of a common carrier's operating authority. The authority of an administrative agency "is not limited to those powers expressly granted by statute, but includes, also, all powers that may fairly be implied therefrom." *Winston v. New Mexico State Police Bd.,* 80 N.M. 310, 311, 454 P.2d 967, 968 (1969). The Commission is required under NMSA 1978, Section 65–2–125(A)(10) (Repl.Pamp.1990) to collect a fifteen dollar filing fee with any application for voluntary suspension of a certificate, and under Section 65–2–125(A)(12) to collect a $100 filing fee with any application for reinstatement of a certificate following voluntary suspension. Reading the Motor Carrier Act as a whole and giving effect to all of its provisions, *see Cox v. City of Albuquerque,* 53 N.M. 334, 339, 207 P.2d 1017, 1021 (1949) (when interpreting legislation, "whole Act is to be read together"), we believe that the Commission had implicit authority to grant a voluntary suspension of Broom's certificate under the first independent clause of the second sentence of Section 65–2–92.[1]

■ *Commission must give notice of voluntary suspension.* Section 65–2–92 authorizes the Commission to amend, suspend, or revoke a certificate in three situations: upon application of the holder, upon complaint, or on the Commission's own initiative. The power to amend, suspend (implicitly, as discussed above), or revoke upon application of the holder is contained in the first independent clause of the second sentence before a disjunctive "or" and may be exercised "in the discretion of the commission." This independent clause contains no notice and hearing requirement. By contrast, the power to suspend, amend, or revoke a certificate upon complaint or on the commission's own initiative is contained in the independent clause after the disjunctive "or" and may be exercised only after notice and hearing. Because the first independent clause contains no notice and hearing requirement and the second independent clause does, a voluntary suspension application filed by the certificate holder arguably does not require notice and hearing. *Cf. Hale v. Basin Motor Co.,* 110 N.M. 314, 318, 795 P.2d 1006, 1010 (1990) (stating that "the word 'or' should be given its normal disjunctive meaning unless the context of a statute demands otherwise" and recognizing that qualifying words should be applied only to the words or phrase immediately preceding them).

However, the Motor Carrier Act is not the sole source of the Commission's duties. The Commission also must comply with its constitutional mandate as established in part by Article XI, Section 8 of the New Mexico Constitution. *See In re Gen. Tel. Co.,* 98 N.M. at 755, 652 P.2d at 1206. Section 8 provides that "[t]he commission shall determine no question nor issue any order in relation to [matters of public convenience and necessity] until after a public hearing held upon ten days' notice to the parties concerned." Just as Broom's certificate is a matter of public convenience and necessity, *see* NMSA 1978, § 65–2–84(B)(2) (Repl. Pamp.1990) (stating that commission must find "transportation to be provided under [a]

---

1. Section 65–2–92 provides in relevant part:
 Any certificate, permit or license may, upon application of the holder thereof, in the discretion of the commission, be amended or re- voked in whole or in part or may, upon complaint, or on the commission's own initiative, after notice and hearing be suspended, amended or revoked, in whole or in part.

certificate is or will be required by the present or future public convenience and necessity"), so too is its suspension. Hence whether AA Oilfield and other common carriers are entitled to notice and hearing depends on whether they are "parties concerned" as that phrase is used in Article XI, Section 8.

This Court has treated as synonymous the terms "parties concerned," as that term is used in Section 8, and "interested parties," as that term is used in the Motor Carrier Act. *See Groendyke Transp., Inc. v. New Mexico State Corp. Comm'n,* 85 N.M. 531, 533, 514 P.2d 50, 52 (1973). The Act defines "interested parties" to "include all carriers operating over the routes or any part thereof . . . involved in any application for a certificate . . . or any application to . . . change . . . any rule, regulation or practice." Section 65–2–82(K). Because the common carriers involved in this appeal operate over the same routes as Broom, they are "interested parties" within the meaning of the Motor Carrier Act and were entitled to notice and hearing prior to issuance of the Commission's order granting Broom's petition for a voluntary suspension.

Requiring the Commission to provide AA Oilfield with notice and a hearing prior to ruling on a petition for voluntary suspension comports with the policy of the Motor Carrier Act. With passage of the Act the legislature sought to ensure that the common carrier industry was "regulated so as to provide for . . . a safe, sound, adequate, economical and efficient intrastate motor carrier system." Section 65–2–81. Giving notice and hearing to interested carriers allows them to present evidence indicating that the certificate should be canceled rather than suspended. Allowing such evidence to be presented fosters the avowed policy of the Motor Carrier Act by helping the Commission weed out inefficient carriers at an earlier point in time than might be possible if the Motor Carrier Act were interpreted to require notice and hearing only when a carrier sought to transfer its certificate.

■ *Failure to provide notice and hearing prior to suspension was harmless.* Generally, if the Commission enters an order without providing notice and hearing as re-

quired, such orders are void and subject to collateral attack. *See Groendyke Transp., Inc. v. New Mexico State Corp. Comm'n,* 79 N.M. 60, 62, 439 P.2d 709, 711 (1968). However, for a party to have standing to attack such an order, that party must first show that it has been prejudiced by the lack of notice and hearing. *Cf. State v. Hines,* 78 N.M. 471, 473, 432 P.2d 827, 829 (1967) ("[a] violation of due process can be urged only by those who can show an impairment of their rights."). In this case the record discloses that the Commission's order granting Broom's voluntary suspension had no impact on the business of other carriers. Counsel for AA Oilfield conceded that it could not provide evidence of injury. Thus we hold that the Commission's error in failing to provide AA Oilfield with notice and hearing was harmless.

■ *Broom did not satisfy the requirement of reasonably continuous service.* NMSA 1978, Section 65–2–93 (Repl. Pamp.1990) states that "certificates . . . shall not be assigned or transferred . . . where it appears that reasonably continuous service under the authority . . . has not been rendered prior to the application for transfer or assignment." In this case four months passed between Broom's last use of its dry authority (April 1985) and the filing of its initial transfer application (August 1985), and nearly three years passed between Broom's last use of its wet authority (April 1986) and the filing of the commission-approved March 1989 transfer application.

■ What constitutes "reasonably continuous service" depends on the particular circumstances and the type of certificate authority held. *Cf. Bennett v. State Corp. Comm'n,* 73 N.M. 126, 130, 385 P.2d 978, 981 (1963) (stating that occasional use of certificate authority by a holder with a certificate authorizing non-scheduled service over irregular routes did not constitute dormancy requiring amendment or revocation). At a minimum, a carrier must be ready, willing, and able to provide service. *See Musslewhite v. State Corp. Comm'n,* 61 N.M. 97, 100, 295 P.2d 216, 218 (1956) (holding that mere nonuse of certificate authority does not

constitute abandonment of service when holder shown to be ready, able, and willing to operate). In this case Broom was neither ready, willing, nor able to provide service after December 1986 when it fired all of its employees, and thus it did not provide reasonably continuous service between December 1986 and March 1989.

 Section 65–2–93, however, permits transfer when reasonably continuous service has been provided prior to an *application* for transfer. Broom filed three separate applications for transfer, the first being filed in August 1985. Thus, the Commission's authority to transfer the certificate depends on whether "application" as used in the Motor Carrier Act means initial application or an application that is eventually approved. We believe the question whether the discontinuance of service in connection with one or more unsuccessful applications for transfer has violated the requirement of "reasonably continuous service" is one of fact and must be decided by the Commission on a case by case basis.

 *The Commission cannot grant equitable remedies.* This Court has recognized that administrative agencies such as the Commission may exercise "quasi-judicial" powers. *See Wylie Corp. v. Mowrer,* 104 N.M. 751, 752–53, 726 P.2d 1381, 1382–83 (1986). The Commission's authority to grant an equitable remedy depends on whether such authority may be fairly encompassed within the realm of "quasi-judicial" powers. We do not believe that it can. In *Continental Oil Co. v. Oil Conservation Commission,* 70 N.M. 310, 318, 373 P.2d 809, 814 (1962), we observed "that an administrative body may be delegated the power to make fact determinations *to which the law, as set forth by the legislative body, is to be applied."* (Emphasis added.) Thus, when the legislature delegates powers to an agency, "boundaries of authority must be defined and followed." *Rivas v. Board of Cosmetologists,* 101 N.M. 592, 593, 686 P.2d 934, 935 (1984). Similarly, an agency "must conform to some statutory standard ... or intelligible principle." *Id.* (citation omitted).

The legislature provides the Commission with the statutory authority to determine whether reasonably continuous service has been provided prior to transfer. If such service has not been provided, then the Commission is obligated to deny the transfer application. As indicated previously, "reasonably continuous service" is an ultimate fact issue to be decided by the Commission. In this case the Commission could not ignore the statute and approve Broom's transfer application by estopping itself from applying the statute as written. For similar reasons, Broom's arguments that the Commission could substitute Broom's promise to attempt to transfer its certificate for the statutory requirement of providing reasonably continuous service and that the Motor Carrier Act could place no substantive limitations on the Commission's power to act in the public interest are without merit. *Cf. Bekins Van & Storage Co. v. State Corp. Comm'n,* 65 N.M. 423, 428–29, 338 P.2d 1055, 1059 (1959) (stating that Commission could not impose requirement that transfer applicant make new showing of public convenience and necessity when such a requirement was not in the statute) (decided under former law).

 *The Commission is estopped from applying the reasonably continuous service requirement of Section 65–2–93 to Broom.* Broom argues that if the Commission could not estop itself, the district court had the power to grant equitable estoppel relief and did so by affirming the Commission's order. The district court concluded that it would be

> an egregious error to allow the Commission to lull Linda Broom into thinking that her transfer would not be denied on that basis.... A fair reading of the Commission's lengthy findings of fact support [sic] this conclusion.... Each and every element of estoppel is contained in the Commission's decision.

The district court did more than simply approve the Commission's self-estoppel. It also found that the facts before the Commission supported a conclusion that estoppel was proper. We agree.

Although we stated in *Rainaldi v. Public Employees Retirement Board,* 115 N.M. 650, 657, 857 P.2d 761, 768 (1993), that "[g]enerally, statements of opinion on a matter of law

raise no estoppel where the facts are equally well known to both parties," we believe the circumstances of this case are distinguishable from those in *Rainaldi*. As the Commission's Director of Transportation, Smith presumably has special knowledge as to the application of the Motor Carrier Act. *Cf. id.* at 658, 857 P.2d at 769 (stating that employees of retirement board that was charged with administering Public Employees Retirement Act "had special knowledge regarding its application"). In *Rainaldi* this Court refused to adopt a blanket rule "that the state may never be estopped by the statement of an employee when a person comes to that employee for an opinion regarding a question where that employee has special knowledge." *Id.* at 659, 857 P.2d at 770; *cf. Trujillo v. Gonzales,* 106 N.M. 620, 622, 747 P.2d 915, 917 (1987) (holding that county not bound by oral promise of employment made by county commissioners outside board meeting when language of statute clearly stated that powers of municipal council must be exercised at legally called meeting). This Court also has observed that "there well may be a distinction between those cases where estoppel would result in the *receipt of benefits* to which an individual would not otherwise be entitled and those where estoppel would foreclose *liability* of an individual who relied on the advice." *Rainaldi,* 115 N.M. at 658, 857 P.2d at 769.

We do not wish to create a disincentive for administrative employees with special knowledge to give advice, *see Rainaldi,* 115 N.M. at 659, 857 P.2d at 770 (quoting *Office of Personnel Management v. Richmond,* 496 U.S. 414, 433–34, 110 S.Ct. 2465, 2476–77, 110 L.Ed.2d 387 (1990)), nor do we wish to discourage individuals from seeking out and relying on such advice. Broom relied on Smith's advice and neither filed additional requests to have the entire certificate suspended nor continued to exercise its authority under the certificate to protect the certificate from a determination that reasonably continuous service had not been provided. The result of this reliance is that Section 65–2–93 may be used to prevent Broom from transferring its certificate thereby leaving it in debt for $135,000. Viewing the facts as a whole, we conclude that right and justice demand that the Commission be estopped from applying the reasonably continuous service requirements of Section 65–2–93 to Broom.

At the September 1989 transfer hearing AA Oilfield had an opportunity to show that transfer of Broom's certificate was not in the public interest. After hearing all the evidence, because it found that the transfer was in the public interest, the Commission rejected AA Oilfield's petition to stop the transfer and revoke Broom's certificate. AA Oilfield does not contest this finding. It simply seeks to have the Commission's order overturned because Broom did not provide reasonably continuous service. We agree with the district court's conclusion that the Commission was properly estopped from applying this requirement to Broom. Therefore, it is unnecessary to remand for a decision of the ultimate issue of reasonably continuous service.

■ *The Commission is not collaterally estopped from transferring Broom's certificate.* In its final point AA Oilfield argues that, because it found previously that the dry authority of Broom's certificate had been allowed to lie dormant by proposed transferee Gold Star, the Commission is collaterally estopped from approving a transfer of that certificate. Because the Commission's order denying the Gold Star application included this finding, AA Oilfield argues that the Commission necessarily found that reasonably continuous service had not been provided, the Commission is collaterally estopped to find that reasonably continuous service was provided, and the transfer application must be denied under Section 65–2–93. This argument is not well taken.

■ Collateral estoppel bars relitigation of issues decided against a party in a prior proceeding when those issues were actually litigated and necessarily determined. *Silva v. State,* 106 N.M. 472, 474, 745 P.2d 380, 382 (1987). It is an equitable doctrine, *see C & H Constr. & Paving Co. v. Citizens Bank,* 93 N.M. 150, 159, 597 P.2d 1190, 1199 (Ct.App.1979), and after considering "the countervailing equities," *Silva,* 106 N.M. at 476, 745 P.2d at 384, a court has discretion to

decide whether the doctrine should be applied, *id.* at 474, 745 P.2d at 382. We express no opinion as to whether the requirements to invoke collateral estoppel have been met in this case. We have weighed the equities favoring Broom's position and AA Oilfield's position, and we have held that the Commission was properly estopped from applying the reasonably continuous service requirement to Broom. We will not use the prudential and equitable doctrine of collateral estoppel to undo what we have already observed that equity commands.

*Conclusion.* Because we find that the Commission is estopped from applying the requirement of reasonably continuous service to Broom's transfer application, we affirm the district court and uphold the Commission's order granting Broom's application to transfer its certificate to Hughes.

**IT IS SO ORDERED.**

BACA and FROST, JJ., concur.