1998-NMCA-004

952 P.2d 474

**Peter CHAVEZ, Plaintiff–Appellant,**

v.

**CITY OF ALBUQUERQUE, Arthur Blumenfeld, City of Albuquerque Personnel Board, Donald D. Young and David Campbell, Defendants–Appellees.**

**No. 16941.**

Court of Appeals of New Mexico.

Dec. 9, 1997.

Paul Livingston, Albuquerque, for Plaintiff–Appellant.

Robert M. White, City Attorney, Victor S. Lopez, Randy M. Autio, Assistant City Attorneys, Albuquerque, for Defendants–Appellees City of Albuquerque, Arthur Blumenfeld and David Campbell.

Todd M. Stafford, David A. Rammelkamp, Albuquerque, for Defendants–Appellees City of Albuquerque Personnel Board and Donald D. Young.

## OPINIÓN

WECHSLER, Judge.

1. Plaintiff Peter Chavez appeals the grant of summary judgment to the City of Albuquerque (the City) based on claim preclusion, commonly known as res judicata. We must determine the preclusive effect of Plaintiff's administrative grievance proceeding on his subsequent district court action. In so doing, we also consider whether the City's personnel board (personnel board) would have had authority to consider the district court claims had Plaintiff raised those claims during the administrative proceeding. We affirm in part and reverse in part.

*Facts and Prior Proceedings*

2. The City terminated Plaintiff from his full-time position in the City's Solid Waste Management Department after he submitted to mandatory drug testing and tested posi-

tive for drugs. Plaintiff filed a grievance to appeal his termination to the personnel board, which upheld the hearing officer's recommended termination. Plaintiff did not pursue an appeal from the grievance proceeding to district court. *See* Merit System Ordinance (MSO), Albuquerque, N .M., Rev. Ordinances, ch. 3, art. 1, §§ 3–1–1 to –25 (1978 & Supp.1995); *id.* § 3–1–23(E)(5) (providing for judicial review). Instead, Plaintiff filed a separate district court action for damages and declaratory relief based on breach of contract, denial of Plaintiff's state and federal constitutional rights (to privacy, freedom from unreasonable governmental search and seizure, and procedural and substantive due process of law), and violations of the Open Meetings Act (OMA), NMSA 1978, §§ 10–15–1 to –4 (1974) in the promulgation of the City's drug testing policy, the selection of the personnel hearing officer and members of the personnel board, and the adoption of the decision in this grievance proceeding.

3. The district court granted summary judgment to the City based on the law of claim preclusion. *See Roth v. Thompson,* 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992) (summary judgment proper when no genuine issues of material fact). The court reasoned that Plaintiff was bound by matters which were raised, or which could have been raised, during the grievance because he failed to seek judicial review of the personnel board's decision.

4. We review the court's application of the law to the facts to ascertain whether the district court correctly concluded that the court claims were barred. *See Anaya v. City of Albuquerque,* 1996 NMCA 092, ¶ 5, 122 N.M. 326, 924 P.2d 735 (standard of review). Additionally, we consider as a separate question of law the authority of the personnel board to decide the claims that the district court concluded could have been raised during the grievance. *Cf. Morningstar Water Users Ass'n v. New Mexico Pub. Util. Comm'n,* 120 N.M. 579, 583, 904 P.2d 28, 32 (1995) (standard of review when addressing jurisdiction of state administrative agency).

*Jurisdiction of Personnel Board to Consider Claims*

5. We need not reach the issue of claim preclusion if the personnel board did not have jurisdiction over the district court claims. *See Ford v. New Mexico Dep't of Pub. Safety,* 119 N.M. 405, 409–10, 891 P.2d 546, 550–51 (Ct.App.1994) (claim preclusion applies to claims that could have been raised in prior proceeding). Initially we note that the personnel board's jurisdiction over the contract claims is settled. *See Zamora v. Village of Ruidoso Downs,* 120 N.M. 778, 780–82, 907 P.2d 182, 184–86 (1995). We turn, therefore, to whether the personnel board had jurisdiction over the remaining OMA and constitutional claims.

A. *Authority of the Personnel Board*

■ 6. The essential functions of a municipal personnel board are to establish rules and regulations governing the terms and conditions of municipal employment and to administer the merit system ordinance. *See* NMSA 1978, § 3–13–4(A)(1), (2) (1965). *Cf. Howell v. Heim,* 118 N.M. 500, 504, 882 P.2d 541, 545 (1994) (authority of administrative agency to promulgate rules and regulations is defined by statute). According to MSO, § 3–1–5, the personnel board also serves in an advisory capacity in personnel administration.

7. Among its duties, the personnel board renders a decision "upon the appeal of classified employees of the city concerning certain grievances as provided in § 3–1–23." MSO, § 3–1–5(B). Plaintiff's grievance was a disciplinary action which the MSO characterizes as a Class I grievance. *See* MSO, § 3–1–23(D). Class I grievances are governed by procedures adopted by the personnel board, and are conducted by the personnel hearing officer who makes a recommendation to the personnel board. *See* MSO, § 3–1–23(E)(3). The personnel board renders the final decision in the process, *see* MSO, § 3–1–23(E)(4)(b), by exercising a limited number of options all directly related to the disciplinary action which is the subject of the grievance: accept or reverse the disciplinary action; modify the disciplinary action; or, remand the matter to the hearing officer for further hearing or for a more detailed report. MSO, § 3–1–23(E)(4)(a).

8. Class I grievance rights accord due process to those discharged public employees who have a constitutionally protected property interest in public employment. *See Zamora,* 120 N.M. at 781, 907 P.2d at 185. When such rights are invoked, the board serves as final arbiter of the City's employment action. "Grievances" are limited to "those matters which fall exclusively within the purview of this article or the implementation of the Personnel Rules and Regulations." MSO, § 3–1–23(A)(1). The personnel board's exercise of authority is contingent upon (1) a management action (2) that falls within the scope of a Class I grievance (3) concerning a classified employee who is subject to the MSO. *See* § 3–13–4(D) (personnel exemptions from MSO).

9. These MSO contingencies are irrelevant to the OMA and the constitutional claims because other law specifies that the district courts have jurisdiction over these claims. The OMA vests exclusive jurisdiction in the district court over OMA enforcement actions. *See* § 10–15–3(B). Here, Plaintiff alleged that the City violated the OMA when the City debated and promulgated the policy at issue and selected its personnel hearing officer. *See* § 10–15–1(A) to (J) (policy of OMA and procedures to be followed).

10. The district courts and federal courts share jurisdiction over claims brought under 42 U.S.C. § 1983 (1988) (§ 1983 claims). *See Carter v. City of Las Cruces,* 1996 NMCA 047, ¶ 5, 121 N.M. 580, 915 P.2d 336. Section 1983 actions provide a means to vindicate personal constitutional rights in state or federal court when those rights are violated by state action; their primary objective is to award damages or secure injunctive relief. *See Felder v. Casey,* 487 U.S. 131, 139, 108 S.Ct. 2302, 2307, 101 L.Ed.2d 123 (1988). To state a § 1983 claim, Plaintiff must establish that the City, or persons acting under color of law, acted to deprive him of rights, privileges, and/or immunities accruing to him under the United States Constitution. *See Chapman v. Luna,* 102 N.M. 768, 769, 701 P.2d 367, 368 (1985). Section 1983 claims are supplementary to state law claims and remedies based on the same conduct.

*See Wells v. County of Valencia,* 98 N.M. 3, 7, 644 P.2d 517, 521 (1982).

11. Additionally, Plaintiff seeks damages for violation of rights under the New Mexico Constitution. Plaintiff may not seek damages from the City for violation of state constitutional rights unless immunity is waived under the Tort Claims Act, NMSA 1978, §§ 41–4–3 to –27 (1995). *See Ford,* 119 N.M. at 412, 891 P.2d at 553; *see also* § 41–4–3(B) ("local public body" is "governmental entity"); § 41–4–3(C) (municipality is "local public body"); § 41–4–3(F)(1) ("public employee" includes appointed officials of governmental entity); § 41–4–3(F)(3) ("public employee" includes person acting on behalf of or in service of a governmental entity). Consequently, exclusive original jurisdiction lies in the district court. *See* § 41–4–18(A).

12. Because of the personnel board's limited statutory authority to adopt regulations and to administer the merit system ordinance and because of the broader explicit state and federal authority of district courts to entertain the OMA and constitutional claims, we conclude that the personnel board does not have jurisdiction to grant affirmative relief over the OMA and constitutional claims. *See Lasley v. Baca,* 95 N.M. 791, 794, 626 P.2d 1288, 1291 (1981) (lack of subject matter jurisdiction means lack of authority to decide matters presented).

13. Thus, Plaintiff must be permitted to split his claims between the grievance proceeding and the district court action even if the claims arose from the same disciplinary action. *See Ford,* 119 N.M. at 413, 891 P.2d at 554 (claim preclusion generally applies where the thrust of both actions was wrongful discharge); *Eberhardt v. Levasseur,* 630 So.2d 844, 846 (La.Ct.App.1993) (determining that the trial court had subject matter jurisdiction over § 1983 claims—previously raised during civil service commission hearing—because civil service commission did not have jurisdiction over those claims).

B. *Exclusivity of the Grievance Procedure*

14. The City argues that Plaintiff waived his right to his day in court when he

failed to appeal from the grievance. The City maintains that the Class I grievance provides the exclusive remedy for Plaintiff's causes of action. An exclusive remedy is one which provides for a plain, adequate, and complete means of resolution through the administrative appeals process to the courts. *See Neff v. State ex rel. Taxation & Revenue Dep't*, 116 N.M. 240, 244–45, 861 P.2d 281, 285–86 (Ct.App.1993).

15. If the remedy were exclusive, then all claims arising from the termination would be subject to MSO procedures. *See State ex rel. Norvell v. Arizona Pub. Serv. Co.*, 85 N.M. 165, 170, 510 P.2d 98, 103 (1973) (citing 3 Kenneth Culp Davis, *Administrative Law Treatise* § 19.01 (1958)); *Neff*, 116 N.M. at 243, 861 P.2d at 284. In *Neff*, this Court required the taxpayers to pursue the administrative scheme through to its district court stage in order to raise their constitutional challenge to a tax, an issue which the administrative authority admittedly had no jurisdiction to consider. *Id.* at 244–45, 861 P.2d at 285–86. Taxpayers could not bypass the comprehensive administrative scheme. *Id.* at 244, 861 P.2d at 285.

16. The City has enacted a comprehensive MSO, which provides for judicial review. *See* MSO, § 3–1–23(E)(5). However, the City's intent as expressed in the MSO is not the critical question. The issue turns on legislative intent as expressed in the enabling legislation. *See Grand Lodge v. Taxation & Revenue Dep't*, 106 N.M. 179, 181, 740 P.2d 1163, 1165 (Ct.App.1987); *cf. Armijo v. Save 'N Gain*, 108 N.M. 281, 285–86, 771 P.2d 989, 993–94 (Ct.App.1989) (whether administrative agency—here, the Workers' Compensation Division—properly exercised authority is dependent upon the agency's enabling legislation). The enabling legislation is found in the Municipal Code, NMSA 1978, §§ 3–1–1 to 3–64–5 (1965). *Zamora*, 120 N.M. at 780–81, 907 P.2d at 184–85 (municipal personnel boards derive their authority over employment from the Code).

17. The Code provides that "[a]ny municipality may establish by ordinance a merit system for the hiring, promotion, discharge and general regulation of municipal employees." *See* § 3–13–4(A). The Code on its face is permissive, not mandatory. *See Gandy v. WalMart Stores, Inc.*, 117 N.M. 441, 443–44, 872 P.2d 859, 861–62 (1994) ("may" is permissive rather than mandatory); *see also Cummings v. X–Ray Assocs.*, 1996 NMSC 035, ¶ 44, 121 N.M. 821, 918 P.2d 1321 (language of statute is primary indicator of legislative intent). The Code does not require a municipality to appoint a personnel board to administer the ordinance. *See* § 3–13–4(A)(1). Nor does it require that merit system ordinances include specific rules and regulations pertaining to the terms and conditions of municipal employment. *See* § 3–13–4(A)(2).

18. Notably missing from the Municipal Code is any provision for judicial review of personnel board decisions. *Cf. Neff*, 116 N.M. at 244–45, 861 P.2d at 285–86 (exclusive administrative scheme provided by legislation for access to the courts). Without statutory language limiting remedial alternatives to the Personnel Board, we cannot infer such an intent of the legislature just because the City, on its own, has selected an administrative scheme which affords different remedies from those generally available under state law. *See Gandy*, 117 N.M. at 443, 872 P.2d at 861 (comprehensive scheme for remedying violations under the Human Rights Act does not preclude separate retaliatory discharge claim).

*Claim Preclusion*

19. We proceed to determine whether the district court properly barred the only claims within the scope of the personnel board's authority: the contract claims. The grievance decision was a final judgment for purposes of claim preclusion. *See* MSO, § 3–1–23(5); *Shovelin v. Central N.M. Elec. Coop., Inc.*, 115 N.M. 293, 297–98, 850 P.2d 996, 1000–01 (1993) (court may apply claim preclusion to decisions of quasi-judicial bodies acting within the scope of their authority).

20. Four elements are required for the application of claim preclusion:

(1) the same parties or parties in privity;

(2) the identity of capacity or character of persons for or against whom the claim is made;

(3) the same subject matter; and

(4) the same cause of action in both suits.

*Anaya,* 1996 NMCA, 092, ¶ 6, 122 N.M. 326, 924 P.2d 735.

21. We can summarily dispose of the first three elements. The subject matter was the same because both actions sought to redress an allegedly illegal termination. *See Ford,* 119 N.M. at 414, 891 P.2d at 555. We also conclude that the parties were the same, and acted in the same capacity, despite the number of different City officials named in the district court action. This requirement simply serves the fundamental notion that a person cannot be bound by a judgment without reasonable notice and an opportunity to be heard. *See Three Rivers Land Co. v. Maddoux,* 98 N.M. 690, 694, 652 P.2d 240, 244 (1982), *overruled on other grounds by Universal Life Church v. Coxon,* 105 N.M. 57, 728 P.2d 467 (1986). Plaintiff cannot reasonably argue that the party responsible for the contract claims had no notice of the grievance and no opportunity to be heard therein.

22. To determine whether the cause of action was the same, we apply the transactional test from the Restatement (Second) of Judgments § 24(2) (1982). *See Anaya,* 1996 NMCA 092, ¶ 7, 122 N.M. 326, 924 P.2d 735. In so doing, we bear in mind that claim preclusion is intended to promote finality in civil disputes, *see Cherpelis v. Cherpelis,* 1996 NMCA 037, ¶ 20, 121 N.M. 500, 914 P.2d 637, and to serve judicial economy by preventing abuse of process. *See Ford,* 119 N.M. at 409, 891 P.2d at 550.

23. "Transaction" denotes a common nucleus of operative facts. *See* Restatement, *supra,* § 24 cmt. b. We compare the essential operative facts of the grievance action and the contract claims and consider (1) how the facts relate in time, space, origin, or motivation; (2) whether, taken together, the facts form a convenient trial unit; and (3) whether treatment of the facts as a single unit conforms to the parties' expectations, or business understanding or usage. *See Anaya,* 1996 NMCA 092, ¶ 12, 122 N.M. 326, 924 P.2d 735; Restatement, *supra,* § 24(2).

24. We note that the operative facts of both actions overlap in their focus on the terms and conditions of city employment. Plaintiff based his district court contract claims on (1) his termination for a first violation of the drug policy as opposed to graduated discipline; and (2) the City's many-month delay in concluding the administrative grievance hearing. Plaintiff maintained that the City failed to act fairly and in good faith. These claims fall within the scope of grievance proceedings because their disposition requires an examination of the City's personnel rules and regulations. *See* MSO, § 3–1–23(A)(1) ("grievances" include matters concerning the implementation of personnel rules and regulations).

25. The contract claims and the grievance both challenged the justification for termination. *See* MSO, § 3–1–22(A)(1) (providing notice that an employee may be terminated for justifiable cause). Plaintiff acknowledges that both the union contract and the MSO provided the basis for the grievance hearing. The MSO constitutes a contract of employment. *See* § 3–13–4(C). Although the record on appeal does not contain a record of the grievance hearing, the recommendation of the hearing officer is of record. The recommendation indicates that the hearing officer considered but rejected one of Plaintiff's contract claims—the alleged contractual right to graduated disciplinary action based on past job performance. The hearing officer specifically found that past job performance could not be considered in mitigation of termination under the policy.

26. We are not persuaded that the contract claims would have depended on different evidence with regard to different witnesses with different authority. *See Anaya,* 1996 NMCA 092, ¶ 15, 122 N.M. 326, 924 P.2d 735 (when claims involve allegations of conduct by different persons in dissimilar situations and at distinct times, the evidence is not susceptible to one convenient trial unit). Both actions were taken against the City in its capacity as Plaintiff's employer. Plaintiff appeared at the grievance hearing with a union representative, and Plaintiff's department supervisor appeared on behalf of the City as the party responsible for Plain-

tiff's termination. *See* MSO, § 3–1–23(E) (CAO appears for the City); *see also* MSO, § 3–1–2(A), (B) (head of department may serve as the CAO for department employment). Knowledge of the terms and conditions of employment is chargeable to Plaintiff, and within the expertise of the union representative. *See* NMSA 1978, § 10–7D–17 (1992) (scope of public employee bargaining). The fact that Plaintiff asserted some of his contractual rights during the grievance indicates that the witnesses and the evidence relevant to both claims overlapped. *See Anaya,* 1996 NMCA 092, ¶ 14, 122 N.M. 326, 924 P.2d 735 (citing Restatement, *supra,* § 24 cmt. b).

27. Finally, treatment of the facts as a single unit conforms to the parties' expectations, or we have not been presented with a persuasive position to the contrary. *See* Restatement, *supra,* § 24(2). Grievance proceedings enable prompt resolution of employment problems. *See* MSO, § 3–1–23(A)(2). When the contract claims draw upon related facts, the expedited procedures present no substantive obstacle. Both parties could have reasonably expected that Plaintiff's contract claims would be raised during the grievance, and not at some future date after the personnel board's decision had become final. *See* MSO, § 3–1–23(E)(4)(b).

28. We conclude that the grievance and the contract claims arose from the same transaction. Plaintiff was able to raise his contract claims during the administrative proceeding and in the interest of judicial economy should have done so. *See Zamora,* 120 N.M. at 780–81, 907 P.2d at 184–85.

*Conclusion*

29. The City was entitled to summary judgment as a matter of law only on the contract claims. The district court erred in applying claim preclusion to bar Plaintiff's OMA and constitutional claims when the personnel board had no jurisdiction over them. Therefore, we affirm in part and reverse in part, and remand to the district court for reinstatement of the OMA and constitutional claims.

30. **IT IS SO ORDERED.**

BOSSON, J., concurs.

HARTZ, C.J., specially concurring in part and dissenting in part.

HARTZ, Chief Judge, specially concurring in part and dissenting in part.

31. I concur in the result except that I would bar Plaintiff's claim that the hearing officer's appointment violated the Open Meetings Act.

32. I agree with the majority that Plaintiff's breach-of-contract claim is barred by the proceeding before the City's personnel board. The legislature has authorized municipalities to enact merit system ordinances establishing grievance proceedings as the exclusive means for a municipal employee to claim that a job termination violated the employee's contractual rights under the ordinance. *See Zamora v. Village of Ruidoso Downs,* 120 N.M. 778, 907 P.2d 182 (1995).

33. I also agree that the personnel board does not have jurisdiction to decide the validity of city ordinances. In particular, the board does not have jurisdiction to decide whether the ordinance establishing the City's drug testing program is invalid on the ground that (1) the ordinance was enacted in violation of the Open Meetings Act or (2) the ordinance violates constitutional restrictions on search and seizure. Our Supreme Court stated in *Sandia Savings & Loan Ass'n v. Kleinheim,* 74 N.M. 95, 100, 391 P.2d 324, 327–28 (1964):

A fundamental distinction must be recognized between constitutional applicability of legislation to particular facts and constitutionality of the legislation. When a tribunal passes upon constitutional applicability, it is carrying out the legislative intent, either express or implied or presumed. When a tribunal passes upon constitutionality of the legislation, the question is whether it shall take action which runs counter to the legislative intent. *We commit to administrative agencies the power to determine constitutional applicability, but we do not commit to administrative agencies the power to determine constitutionality of legislation.* Only the courts have authority to take action which

runs counter to the expressed will of the legislative body.

(quoting 3 Kenneth C. Davis, *Administrative Law Treatise*, § 20 .04 at 74 (1958)). Although *Sandia Savings* addresses a state agency's review of the "constitutionality of legislation," the same considerations apply to a municipal agency's review of the validity of a municipal ordinance under state statutes. Accordingly, a municipal agency cannot review whether the municipality's enactments are valid under the law of a higher authority.

34. To be sure, the employee could raise challenges to the validity of an ordinance through appellate review in district court of the personnel board's action. Indeed, the legislature could mandate that the exclusive avenue for an employee to challenge termination by the City—regardless of the grounds for the challenge—would be by first going through the grievance procedure and then appealing to the district court. *See Neff v. State ex rel. Taxation & Revenue Dep't*, 116 N.M. 240, 244, 861 P.2d 281, 285 (Ct.App. 1993) (income tax cannot be challenged in district court action when taxpayer did not appeal decision of administrative agency); *id.* at 245–46, 861 P.2d at 286–87 (Hartz, J., specially concurring). Such a legislative mandate would at least foreclose independent actions in district court based on state-law grounds. (The extent to which state legislation could affect a federal cause of action, such as one under 42 U.S.C. Section 1983 (1996), is a different question.) But the legislature has issued no such mandate here. On the contrary, the legislature has not even provided for an appeal from the personnel board to district court. (I seriously question whether a city ordinance, as opposed to a statute enacted by the legislature, can confer a right of appeal to state district court, as the City's Merit System Ordinance purports to do.)

35. In short, (1) the personnel board does not have jurisdiction to decide the validity of the challenged ordinance and (2) the legislature has not enacted a statute requiring that

an employee's challenge to the validity of the ordinance be raised through an appeal from the board to district court. I therefore agree with the majority that Plaintiff can bring an independent action in district court seeking relief on the ground that the drug-testing ordinance was invalid.

36. On the other hand, I disagree with the majority's conclusion that Plaintiff can bring an independent district court action claiming that the hearing officer who reviewed his grievance was not appointed in compliance with the Open Meetings Act.[1] I dissent on two grounds. First, the personnel board had jurisdiction to review the validity of the hearing officer's appointment. Although *Sandia Savings* forbids agencies from deciding the constitutionality of legislation, it gives agencies the power to determine the "constitutional applicability of legislation to particular facts." *Sandia Savings*, 74 N.M. at 100, 391 P.2d at 328 (internal quotation marks omitted). That is, an agency has the authority to determine whether the constitution has been applied correctly on a particular occasion. By the same token, the board could decide that the hearing officer had been improperly appointed. Such a determination would not require the board to decide whether any statute or ordinance was invalid. I do not read NMSA 1978 Section 10–15–3(C) (1993), which gives the district courts jurisdiction to enforce the Open Meetings Act, as preventing any other tribunal from deciding whether its own proceedings have complied with the Act. Because the personnel board had jurisdiction over this part of Plaintiff's claim, further litigation of the matter is barred by claim preclusion.

37. The second ground for my dissent is that Plaintiff's challenge to the hearing officer's appointment is an improper collateral attack on the personnel board's decision that his dismissal was in accordance with his contractual rights under the Merit System Ordinance. The sole purpose of the challenge to the hearing officer's appointment is to set aside the decision of the personnel board.

---

1. I believe that this is my sole disagreement with the result reached by the majority. I confess, however, that I am uncertain regarding precisely what claims Plaintiff is pursuing on appeal. The appellate briefs focus on general legal principles rather than discussing the details of the specific claims.

But the exclusive means for reviewing the personnel board's action is through petition to the district court for a writ of certiorari (assuming that there is no statutory right of appeal to the district court). *See Roberson v. Board of Educ.*, 78 N.M. 297, 299–300, 430 P.2d 868, 870–71 (1967); *Hillhaven Corp. v. Human Servs. Dep't.*, 108 N.M. 372, 374, 772 P.2d 902, 904 (Ct.App.1989). Collateral attack on the board's decision is permissible only if its decision was void—for example, if the board lacked jurisdiction. *See AA Oilfield Serv. v. New Mexico State Corp. Comm'n.*, 118 N.M. 273, 278, 881 P.2d 18, 23 (1994). Such is not the case here. In my view, appointment of the hearing officer in violation of the Open Meetings Act, although a possible ground for reversal of the board's decision, would not deprive the board of jurisdiction. *See Alvarez v. County of Bernalillo*, 115 N.M. 328, 850 P.2d 1031 (Ct.App. 1993). Consequently, Plaintiff's challenge to the appointment can be considered only if this portion of his district court action could be characterized as a timely petition for a writ of certiorari, which is highly doubtful. *See Zamora*, 120 N.M. at 785–86, 907 P.2d at 189–90 (absent exceptional circumstances, petition for writ of certiorari must be filed within thirty days of administrative decision).