IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2010-NMSC-048

Filing Date:  October 26, 2010

Docket No. 32,183

EL PASO ELECTRIC COMPANY,

Appellant,

v.

NEW MEXICO PUBLIC REGULATION COMMISSION,

Appellee,

and

DOÑA ANA COUNTY AND OTERO COUNTY,

Intervenors.

APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION

Law Offices of Randall W. Childress, P.C.
Randall W. Childress
Stacey J. Goodwin
Santa Fe, NM

Tucker Law Firm, P.C.
Steven L. Tucker
Santa Fe, NM

for Appellant

Robert Y. Hirasuna
Santa Fe, NM

for Appellee

Stelzner, Winter, Warburton, Flores, Sanchez & Dawes, P.A.
Nann M. Winter

1

Albuquerque, NM

Thomas R. Figart,
Las Cruces, NM

Bryant, Schneider-Cook Law Firm, P.A.
Daniel A. Bryant
Ruidoso, NM

for Intervenors

**OPINION**

**SERNA, Justice.**

**{1}** This opinion resolves a direct appeal by El Paso Electric Company (EPE) of a Final Order issued by the New Mexico Public Regulation Commission (Commission[1]). *In re An Investigation into El Paso Elec. Co.'s Recovery of Cnty. Franchise Fees from Its Ratepayers*, No. 09-00421-UT ( PRC Jan. 26, 2010). The Final Order required EPE to stop including franchise fee charges on the bills of customers in Doña Ana and Otero counties and to refund over five million dollars to customers in those counties. We hold that franchise fee charges fall outside the Commission's jurisdiction and vacate and annul the Final Order.

**BACKGROUND**

**{2}** EPE is an electric utility company that operates in southern New Mexico. At issue in this case are agreements EPE has with Doña Ana and Otero counties (Counties) regarding franchises granted for the use of county rights-of-way to deliver electricity to county residents and businesses.[2] These franchise agreements, codified as county ordinances, impose upon EPE fees for the rights granted. Prior to 1999, EPE passed on franchise fees to all of its customers as part of the base rate for electricity. Since 1999, franchise fees have been collected by EPE through line item charges to customers within the jurisdictions of the respective counties.

---

[1]This Opinion will refer to the Public Regulation Commission as well as its predecessors, the Public Utility Commission and the Public Service Commission, as the Commission.

[2]EPE has franchise agreements with at least two other counties, Luna and Sierra; these agreements were not addressed by the Commission in this case. Nor did the Commission investigate whether other utilities have similar franchise agreements with counties in New Mexico.

2

**{3}** The franchise agreement between EPE and Doña Ana County, signed March 9, 1999, requires EPE to pay annually two percent of gross receipts and $105,000 "for and in consideration of the granting of this Agreement, and as rental and/or tax for the occupation and use or easement and right of way over, upon, and beneath the County Property[.]" The Otero County agreement requires EPE to pay annually, "[f]or and in consideration of the right, privilege and franchise herein granted," "a street rent which is equal to two (2%) percent of the gross receipts of the sale of electricity[.]" The total amounts collect from ratepayers and paid to the Counties by EPE since 2004, and at issue in this appeal, are $288,987 in Otero County and $5,366,804 in Doña Ana County.

**{4}** The Commission initiated an investigation into these two franchise agreements and issued an order to show cause, dated December 10, 2009, requiring EPE to demonstrate "why the Commission should not find that the franchise fees or taxes imposed under the [Counties'] franchise ordinances are unlawful under New Mexico statutes, and if so, why the Commission should not" require EPE to immediately stop collecting the fees from customers and refund any fees already collected. No public hearing was ever scheduled on this matter. The Commission issued the Final Order on January 26, 2010, concluding that it had jurisdiction because "franchise fees are rates that are charged in connection with it [*sic*] utility service and thus are subject to the jurisdiction of the Commission." The Final Order required EPE to stop passing through franchise fee charges and to refund to the ratepayers the amounts collected since 2004.

**{5}** On February 22, 2010, a panel of this Court granted an emergency stay of the Commission's order pending resolution of this appeal on the merits and granted the Counties' motion to be added as parties. This case is before us pursuant to NMSA 1978, Section 62-11-1 (1993). We address only the dispositive question in the case of whether the Commission had jurisdiction over the fees collected by EPE pursuant to franchise agreements with the Counties.

## DISCUSSION

### Standard of Review

**{6}** The Commission, though a constitutionally created body, N.M. Const. art. XI, § 1, may exercise only its statutorily authorized jurisdiction. *Plains Elec. Generation & Transmission Coop., Inc. v. N.M. Pub. Util. Comm'n*, 1998-NMSC-038, ¶ 9, 126 N.M. 152, 967 P.2d 827. We review the Commission's determination of its jurisdiction, an issue of law, de novo. *United Water N.M., Inc. v. N.M. Pub. Util. Comm'n*, 1996-NMSC-007, 121 N.M. 272, 274-75, 910 P.2d 906, 908-09 ("[W]e review anew the question of the [Commission]'s jurisdiction."); *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995) (concluding that an agency's determination of its own jurisdiction is a question of law that deserves "little deference" from the courts (quoting *El Vadito de los Cerrillos Water Ass'n v. N.M. Pub. Serv. Comm'n*, 115 N.M. 784, 787, 858 P.2d 1263, 1266 (1993))); *see also* Rule 12-216(B) NMRA (stating that

3

jurisdictional challenges may be raised for the first time on appeal); *Sims v. Mechem*, 72 N.M. 186, 188, 382 P.2d 183, 184 (1963) (same). We vacate and annul a Commission order as "unreasonable or unlawful" if the Commission wrongfully exerted jurisdiction over a case. NMSA 1978, § 62-11-5 (1982); *see also N.M. Indus. Energy Consumers v. N.M. Pub. Reg. Comm'n* (*NMIEC*), 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105 ("We will reverse the agency's interpretation of law if it is unreasonable or unlawful.").

**{7}** Our de novo review of the Commission's jurisdiction requires us to engage in statutory construction. "When construing statutes, our guiding principle is to determine and give effect to legislative intent." *NMIEC*, 2007-NMSC-053, ¶ 20. "[W]e strive to read related statutes in harmony so as to give effect to all provisions[.]" *Id.* Unless an ambiguity exists, we apply statutes as written. *Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Reg. Comm'n* (*ABCWUA*), 2010-NMSC-013, ¶ 52, 148 N.M. 21, 229 P.3d 494.

**Commission Jurisdiction Over Public Utility Rate Making**

**{8}** The Legislature mandated public utility regulation in the Public Utility Act (PUA), NMSA 1978, Sections 62-1-1 to -6-26.1 and -8-1 to -13-14 (1953, as amended through 2009). The policy of the PUA includes ensuring that utility services are provided at "fair, just and reasonable rates." Section 62-3-1(B). The Commission enforces this policy through its "general and exclusive power and jurisdiction to regulate and supervise every public utility in respect to its rates and service regulations and in respect to its securities[.]" Section 62-6-4(A). Additionally, the Commission has jurisdiction over tax, fuel, gas, and purchased power adjustment clauses. Section 62-8-7(E); *see also NMIEC*, 2007-NMSC-053, ¶ 22 (stating that the rate-making process jurisdiction conferred on the Commission by the PUA includes jurisdiction over general rate cases and automatic adjustment clauses).

**{9}** The PUA defines "rate" as

> every rate, tariff, charge or other compensation for utility service rendered or to be rendered by a utility and every rule, regulation, practice, act, requirement or privilege in any way relating to such rate, tariff, charge or other compensation and any schedule or tariff or part of a schedule or tariff thereof.

Section 62-3-3(H). The factors used by the Commission when reviewing proposed rates are based on the utility's revenue requirements. Section 62-8-7(D) (stating that reasonable rates "are designed to produce annual revenues no greater than those determined by the [C]ommission . . . to be just and reasonable"); *PNM Gas Servs. v. N.M. Pub. Util. Comm'n* (*In re Petition of PNM Gas Servs.*), 2000-NMSC-012, ¶ 6, 129 N.M. 1, 1 P.3d 383. "The traditional elements of the rate-making process and the establishment of the total revenue requirement are (1) determination of the costs of the operation, (2) determination of the rate base which is the value of the property minus accrued depreciation, and (3) determination of the rate of return." *Hobbs Gas Co. v. N.M. Pub. Serv. Comm'n*, 94 N.M. 731, 733, 616

P.2d 1116, 1118 (1980). "A reasonable rate of return is one that provides a fair opportunity for the utility to receive just compensation for its investments, and that . . . enabl[es] the utility to attract new capital to maintain, improve, and expand its services in response to consumer demand." *In re Petition of PNM Gas Servs.*, 2000-NMSC-012, ¶ 8 (internal quotation marks and citations omitted). Income taxes are included in the base rate, *see, e.g.*, *Zia Natural Gas Co. v. N.M. Pub. Util. Comm'n* (*In re Zia Natural Gas Co.*), 2000-NMSC-011, ¶ 13, 128 N.M. 728, 998 P.2d 564, but gross receipts taxes are excluded from the base rate and must be stated separately on customer bills. Section 62-6-4.5(B). The reasonableness of rates is analyzed on a state-wide level. *See City of Albuquerque v. N.M. Pub. Reg. Comm'n*, 2003-NMSC-028, ¶ 8, 134 N.M. 472, 79 P.3d 297.

**{10}** This Court does not interfere when the Commission exercises its expertise in rate cases. *See id.* ¶¶ 18, 19 (concluding that the Commission had jurisdiction over tariff filed because the Legislature "has specifically provided that the [Commission] may review local land use laws affecting utilities" when reviewing rate cases); *Cnty. of Bernalillo v. N.M. Pub. Reg. Comm'n* (*In re Adjustments to Franchise Fees)*, 2000-NMSC-035, ¶ 18, 129 N.M. 787, 14 P.3d 525 (holding that the Commission had jurisdiction to review rates, and thus delay implementation of NMSA 1978, Section 62-3A-18(A) (1999) (replaced by Section 62-6-4.5 in 2003), because the removal of franchise fee charges from the rate base necessarily required a modification of rates); *In re Zia Natural Gas Co.*, 2000-NMSC-011, ¶¶ 10, 13 (finding that the Commission properly used a hypothetical capital structure to ensure rates were fair to both ratepayers and investors but did err by not including all federal taxes actually paid in expense calculations); *N.M. Indus. Energy Consumers v. N.M. Pub. Serv. Comm'n*, 111 N.M. 622, 627, 808 P.2d 592, 597 (1991) (upholding the Commission's exclusion of the utility's capacity contract from the rate amount because the Commission exercised jurisdiction over the rates, not the contract itself).

**{11}** We have vacated, however, Commission orders issued in excess of its jurisdiction. *See N.M. Elec. Serv. Co. v. N.M. Pub. Serv. Comm'n*, 81 N.M. 683, 685, 472 P.2d 648, 650 (1970) (finding no implied authority for the Commission to treat monies refunded to utility as a rate that the Commission could order passed through to customers); *see also Plains Elec.*, 1998-NMSC-038, ¶ 12 (stating that the conveyance of land "which does not affect the utility services provided by" the utility was outside the Commission's jurisdiction over the sale of utility facilities); *United Water*, 1996-NMSC-007, 121 N.M. at 275, 280, 910 P.2d at 909, 914 (concluding that the Commission improperly exercised jurisdiction over a municipality that had "not elected to submit itself to . . . regulation"); *Morningstar Water*, 120 N.M. at 585, 904 P.2d at 34 (holding that the Commission may only exercise jurisdiction over utilities expressly included in the scope of the PUA); *Summit Props., Inc. v. Pub. Serv. Co. of N.M.*, 2005-NMCA-090, ¶¶ 11, 13, 138 N.M. 208, 118 P.3d 716 (stating that the Commission has no jurisdiction over "contracts a utility enters into with private parties" as the claims arising under those contracts "are not related to the reasonableness of any rates established by the Commission"). The disposition of this case turns, therefore, on whether or not franchise fee charges are properly considered rates and thus fall within the Commission's jurisdiction.

**Franchise Agreements and Franchise Fee Charges Are Not Rates**

**{12}** Under Section 62-1-3, county commissioner boards (and municipal authorities) may permit public utilities to use county land for the structures necessary to transmit power and "are authorized to grant franchises . . . for such purposes within their respective jurisdictions." Counties are "authorized to impose charges for reasonable actual expenses incurred in the granting of any franchise pursuant to this section." *Id.* Since 1999, franchise fee charges have been stated separately on customer bills: "A franchise fee charge shall be stated as a separate line entry on a bill sent by a public utility . . . to a customer and shall only be recovered from a customer located within the jurisdiction of the government authority imposing the franchise fee." Section 62-6-4.5(A); *see also In re Adjustments to Franchise Fees*, 2000-NMSC-035, ¶ 2 (quoting Commission Order 3071 that stated, "[m]ost electric utilities regulated by the Commission have included franchise fees in base rates in the past").

**{13}** While Section 62-6-4.5 refers to a franchise fee "charge," a term in the list of words used to define rate, *see* § 62-3-3(H), these charges are distinct from those that comprise rates. As discussed above, a utility's rate is based on its revenue requirements: the costs of supplying the fuel and profit for the utility in an amount sufficient to encourage investment. In contrast, a franchise fee is paid by the utility to the county for use of the county's rights-of-way; the utility retains none of the monies collected as franchise fee charges but simply passes them through to the counties. *See In re Adjustments to Franchise Fees*, 2000-NMSC-035, ¶ 2. In *City of Albuquerque v. New Mexico Public Service Commission*, this Court described the purposes of a franchise in the context of one issued by a municipality:

> A franchise granted by a municipality to a public utility merely entitles the utility to use the municipality's streets and rights of way to construct and operate its facilities and distribution system—that is, to run its pipes, poles, wires, and cables, and to operate its towers, transformer stations, and other necessary structures. . . . In exchange for granting a franchise, a municipality may exact consideration from the utility, usually in the form of a franchise fee. . . . If the municipality chooses to forego some or all of this financial remuneration . . . that is up to the municipality and the utility and is a matter of local concern.

115 N.M. 521, 533, 854 P.2d 348, 360 (1993) (internal citations omitted). Unlike rates, franchise agreements and the fees imposed thereby are a matter of local concern, whether that locality is a county or municipality. Franchise fees are not expenses measured on a state-wide scale that contribute to a utility's profit; they are monies collected by the utility, in an amount contracted for with a local government, and passed through to that local government.

**{14}** The similar treatment of franchise fee charges and gross receipts taxes supports the conclusion that the Legislature intended to remove franchise fee charges from the utility

rates. Section 62-6-4.5 requires utilities to pass through both gross receipts taxes and franchise fee charges as separate line items on customer bills. When this statute was enacted in 2003, the Commission was not treating gross receipts taxes as part of the rates over which it had jurisdiction. *See* 17.1.330.9-.10 NMAC (12/30/01). We assume the Legislature is aware of existing law, *El Vadito*, 115 N.M. at 789, 858 P.2d at 1268, including administrative regulations, which have the force of law. *Truong v. Allstate Ins. Co.*, 2010-NMSC-009, ¶ 24, 147 N.M. 583, 227 P.3d 73. By addressing treatment of gross receipts taxes and franchise fee charges in the same statute, the Legislature intended them to be treated similarly by the Commission. We conclude, therefore, that the Legislature intended for franchise fee charges to be distinct from rates—and thus outside of the Commission's jurisdiction.

**{15}** Nor are franchise fees taxes that the Commission may consider when setting rates. Section 62-1-3 explicitly limits franchise fees imposed by counties to "charges for reasonable actual expenses incurred in the granting of any franchise." While taxes, other than gross receipts taxes, are among the monies collected by utilities over which the Commission has jurisdiction, franchise fee charges are not taxes. A tax is a charge imposed that is not related to the services rendered. *See N.M. Mining Ass'n v. N.M. Mining Comm'n*, 1996-NMCA-098, ¶ 23, 122 N.M. 332, 924 P.2d 741. In contrast, a fee is related to a particular benefit or service. *Id.* ¶ 22 ("Generally, a 'fee' is a charge intended to defray, in whole or in part, the expense of regulating or providing a service, benefit or privilege."). The limitations placed on franchise agreements fees by Section 62-1-3 indicate that the Legislature contemplated the charges as fees, not as taxes, thus excluding them from the scope of the Commission's power to consider taxes when setting rates. *Cf. City of Chattanooga, Tenn. v. BellSouth Telecomm., Inc.*, 1 F. Supp. 2d 809, 814 (E.D. Tenn. 1998) (concluding that monies raised from franchise fees imposed on utilities that are used for general purposes and not only for the upkeep of the rights-of-way for which the franchise was imposed are taxes, not fees, under 28 U.S.C. § 1341).

**{16}** Contrary to the Commission's suggestion, franchise fees also do not come within the Commission's jurisdiction by analogy to fuel and purchased power adjustment clauses, over which the Commission does have jurisdiction under Section 62-8-7(E). "The language of Section 62-8-7(E) is plain and unambiguous: only 'taxes or cost of fuel, gas or purchased power' may be recovered automatically." *NMIEC*, 2007-NMSC-053, ¶ 31. Where the Legislature has explicitly removed franchise fee charges from the Commission's rate jurisdiction, and the charges are outside the definition of Section 62-8-7(E), we will not permit the Commission to expand its jurisdiction through false analogy. *See State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, 1999-NMSC-019, ¶ 17, 127 N.M. 272, 980 P.2d 55 (noting that the Commission does not have the power to "pour any meaning it desires into the [jurisdictional] statute" (internal quotation marks and citation omitted)).

**{17}** Our conclusion today does not leave franchise agreements and related charges passed on to public utility customers free from review. The proper method for challenging the costs imposed by the ordinances is the local democratic political process. *See City of Sunland*

*Park v. N.M. Pub. Reg. Comm'n*, 2004-NMCA-024, ¶ 25, 135 N.M. 143, 85 P.3d 267 (stating that the Commission "was created to serve as a watchdog for the public interest" but that it did not have jurisdiction where not vested by the Legislature, which entrusted the public good to a municipality). Additionally, the validity of the ordinance itself may be challenged in a court properly vested with jurisdiction, as noted by the Commission in its Final Order. *See, e.g.*, *Chavez v. City of Albuquerque*, 1998-NMCA-004, ¶ 34, 124 N.M. 479, 952 P.2d 474 (noting that the proper venue for challenging an ordinance is the district court). If the franchise agreements between EPE and the Counties are unlawful or unreasonable, it is for a body other than the Commission to decide.

**CONCLUSION**

**{18}** The Commission improperly construed its jurisdiction over rates to include franchise fee charges, pursuant to local franchise fee ordinances, on ratepayer bills. The Final Order is hereby vacated and annulled.

**{19}    IT IS SO ORDERED**.

_____
                        **PATRICIO M. SERNA, Justice**

**WE CONCUR:**

_____
**CHARLES W. DANIELS, Chief Justice**

_____
**PETRA JIMENEZ MAES, Justice**

_____
**RICHARD C. BOSSON, Justice**

_____
**EDWARD L. CHÁVEZ, Justice**

**Topic Index for *El Paso Elec. Co. v. N.M. Public Relations Comm'n*, Docket No. 32,183**

| **ST** | **STATUTES** |
|---|---|
| ST-AP | Applicability |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |

| **PU** | **PUBLIC UTILITIES** |
|---|---|

PU-EL                Electric
PU-RM                Rate Making

**AL                 ADMINISTRATIVE LAW AND PROCEDURE**
AL-AA                Administrative Appeal
AL-LI                Legislative Intent