1999-NMCA-149

992 P.2d 308

**Henry Burk FLEMING, Mark J. Wilson, Edward Stout, Jr., and Louise R. Fleming, Plaintiffs–Appellants,**

v.

**TOWN OF SILVER CITY, Defendant–Appellee.**

**No. 19,414.**

Court of Appeals of New Mexico.

Sept. 16, 1999.

Certiorari Denied, No. 25,994, Nov. 8, 1999.

Carlos K. Ogden, Deming, for Appellants.

Celia Foy Castillo, David E. Peterson, Foy, Foy & Castillo, P.C., Silver City, for Appellee.

## OPINION

WECHSLER, J.

{1} Appellants Henry Burk Fleming, Mark J. Wilson, Edward Stout, Jr. and Louise R. Fleming appeal the district court's decision upholding the action of Appellee

Town of Silver City's (Town) adjustment of its water and sewer rates. On appeal to this Court, Appellants assert that the district court erred by failing to require that the Town comply with the requirements of the New Mexico Public Utility Act, NMSA 1978, §§ 62–1–1 to 62–13–14 (1887, as amended through 1996) (PUA), and the regulations of the New Mexico Public Utility Commission (PUC) (now the New Mexico Public Regulation Commission (PRC)), *see* NMSA 1978, § 8–8–21 (1998) that would apply to privately owned public utilities seeking a rate increase. Appellants also challenge the district court's decision to permit one of the Town's witnesses to testify as an expert witness in water rates. We affirm.

*Facts and Procedural History*

{2} On March 18, 1996, the Town, by ordinance, increased its water and sewer rates and established a new water rate design spreading its rates over eight rate classifications rather than six and charging twenty-one separate rates rather than twelve. Appellants were among a group of fourteen ratepayers who challenged the Town's actions in district court. Among other allegations, they alleged that the Town's new water rate structure resulted in unfair rates in violation of the Equal Protection Clauses of the United States and New Mexico Constitutions. After trial, the district court entered findings of fact and conclusions of law finding that the new rates were "fair and equitable under all of the circumstances." The conclusions of law state:

1. Rates charged for water consumption by the Town of Silver City are reasonable among the various categories of users.

2. Rates charged for water consumption by the Town of Silver City are fair and equitable.

3. Water system services of the Town of Silver City are not subject to regulation by the Public Utilities Commission.

4. The methodology utilized by the Public Utilities Commission analyzing rates for water service by entities within its regulatory jurisdiction, is not required by law to be utilized by municipal water

utilities not within the regulatory jurisdiction of the Public Utilities Commission.

5. The laws of the State of New Mexico mandate no particular methodology to be followed by a municipality in determining what are reasonable, fair, and equitable rates for use of municipal water utility.

*Whether the Town Needed to Comply with Statutory and Regulatory Requirements to Set Water Rates*

■ {3} In their brief in chief, Appellants challenge only Conclusions of Law Four and Five. They do not challenge that the Town's new rates are fair and equitable and that the new rate structure is reasonable. As a consequence, we do not address Conclusions of Law One, Two, and Three. *See* Rule 12–213(A) NMRA 1999. All issues raised in the docketing statement, but not argued in the brief in chief are deemed abandoned. *See State v. Ramos,* 115 N.M. 718, 720, 858 P.2d 94, 96 (Ct.App.1993).

■ {4} Appellants argue that the Town was required to justify the reasonableness of its new rates by introducing "at minimum ... a full cost of service study similar to the state Public Utility Commission's approach and method." They base their argument on NMSA 1978, § 3–18–1(H) (1972) which permits a municipality to "establish rates for services provided by municipal utilities and revenue-producing projects, including amounts which the governing body determines to be reasonable and consistent with amounts received by private enterprise in the operation of similar facilities." Appellants rely on our Supreme Court's interpretation of the statutory predecessor to Section 3–18–1(H) in *Apodaca v. Wilson,* 86 N.M. 516, 525 P.2d 876 (1974), to support their view that a municipality's processes of establishing reasonable rates must be identical to the processes used by a privately owned public utility company that is regulated by the PUC. We cannot agree.

{5} First, as a matter of statutory construction, Appellants' proposition is erroneous. In the PUA, the legislature declared as a matter of state policy that public utilities be regulated and supervised so that they would, in part, provide reasonable and proper

services at fair, just, and reasonable rates. *See* § 62–3–1(B). The PUA recognizes that public utilities "are affected with the public interest." Section 62–3–1(A). The PUA defines public utilities which fall within this statutory regulation and supervision, in pertinent part, as "every person not engaged solely in interstate business ... that ... may own, operate, lease or control ... any plant, property or facility for the supplying, storage, distribution or furnishing to or for the public of water. . . ." Section 62–3–3(G)(3).

{6} Although under this statutory definition a water system of a municipality may be considered a public utility, the PUA contains other express provisions relating to municipal water utilities. Most clearly, the PUA excludes a municipal utility from its definition of public utility by defining a "person" within the PUA to exclude a municipal utility unless the municipality "has elected to come within the terms" of the PUA. Section 62–3–3(E). Indeed, the PUA specifically states that "[i]n the absence of such voluntary election by any municipality to come within the provisions of the [PUA], the municipality shall be expressly excluded from the operation of [the PUA] and from the operation of all of its provisions,' and no such municipality shall for any purpose be considered a public utility." *Id.* A municipality may elect to have its utility operations regulated and supervised as a public utility under the PUA through an election by its voters. *See* § 62–6–5. Otherwise, a municipal water system does not fall within the purview of the PUA except that the regulation of the PUA extends to prohibit a municipality from operating within the service area of a regulated public utility until the municipality exercises its option to subject itself to regulation under the PUA so that both it and the existing utility may be regulated to avoid unreasonable and unnecessary duplication of plant and resources. *See* § 62–3–2.1(C). Further, a municipality with a population of more than two hundred thousand may be subject to limited PUA regulation. *See* § 62–9–1.1.

{7} We engage in statutory construction as an issue of law, and as such, conduct a de novo review. *See State v. Cleve,* 1999–NMSC–017, ¶ 7, 127 N.M. 240, 980 P.2d

23. We seek to fulfill the intent of the legislature, and in doing so, apply the plain meaning of statutory language. *See Cummings v. X–Ray Assocs. of N.M., P.C.,* 1996–NMSC–035, ¶ 44, 121 N.M. 821, 918 P.2d 1321. The statutory scheme clearly indicates that the Town's water utility is not regulated under the PUA. The Town has not elected to have its utility operations regulated under the PUA, it does not have a population of more than two hundred thousand, and it does not operate within the service area of a regulated public utility. No provision or exception brings the Town within the PUA. We note that this Court has appellate jurisdiction over this appeal because the Town is not subject to the PUA regulatory scheme. *Cf.* § 62–11–1 (permitting appeal to supreme court from PUC's final orders); § 34–5–8(A)(1) (1983) (appellate jurisdiction of the court of appeals includes "any civil action not specifically reserved to the jurisdiction of the supreme court").

{8} Notwithstanding the lack of regulatory oversight of the Town's water utility, Appellants contend that the Town must comply with the regulations of the PUC to demonstrate the propriety of its new rate structure. In 1996, the PUC required a water utility subject to its jurisdiction which had annual operating revenues averaging more than $500,000 for a consecutive three-year period to submit a fully allocated cost of service study by rate classification to support a rate increase. *See* 2 Code of Rules and Regulations of the New Mexico Public Service Commission Rule 730, Filing Requirements in Support of Rate Schedules for Class A and B Water Utilities, at 67–86 (effective June 30, 1988). As suggested by Appellants, this cost of service study required an applicant to explain the methodology it used to identify and classify the utilities' costs and then allocate the costs among rate classes in support of the class distinctions proposed in its rate design. *See id.*

{9} Appellants rely on *Apodaca* to support their position that a municipal utility is held to the same standard in establishing the reasonableness of rates as is a privately owned utility regardless of whether the mu-

nicipal utility is subject to regulation. This reliance is misplaced.

{10} In *Apodaca*, the plaintiffs challenged the City of Albuquerque's increased water and sewer service charges. *See id.* at 519, 525 P.2d at 879. They raised an argument that the new rates were not just and reasonable. *See id.* at 523–24, 525 P.2d at 883–84. Our Supreme Court rejected this argument based on evidence at trial concerning the reasonableness of the rate increases and their favorable comparison with rates of privately owned public utilities. *See id.* at 524, 525 P.2d at 884. The Court noted that the City of Albuquerque,

> by owning and operating its water and sewer system, [was] acting in a business or proprietary capacity rather than in a governmental capacity. Therefore, the obligations resting upon it [were] identical to those of a private utility company operating under a municipal franchise, insofar as the determination of the reasonableness of its rates is concerned."

*Id.* Appellants read this statement to mean that the Town, as a municipal utility, must present the identical evidence of reasonableness to support increased rates as would a privately owned public utility subject to the jurisdiction of the PUC. This reading is incorrect. Our Supreme Court only discussed the parallel obligations of the City of Albuquerque and a private utility to establish the reasonableness of its rates. It did not require, or even address, the manner in which this reasonableness would be established.

{11} Section 3–18–1(H) further contradicts Appellants' position. That section requires only that a municipality's utility rates be reasonable and consistent with the rates charged by similar private utilities. Again, the statute does not mention any method to establish reasonableness. When read in conjunction with the PUA, the statutory scheme clearly does not require a municipality to utilize any particular study or methodology to satisfy the standard of reasonableness. Even though they act in a proprietary capacity when they own and operate utilities, municipalities are different entities from privately-owned utilities. The PUA requires the regulation of utilities because they "are

affected with the public interest" by providing a service necessary to the public. Section 62–3–1(A). The PUA provides that such water utilities receive an exclusive area of service to serve the public in exchange for regulatory restraints for the protection of the public. Municipalities, as governmental entities, are subject to other restraints that the PUA recognizes as sufficient restraints upon the municipal utility such that regulation by a regulatory body is not necessary to protect the public interest. *See United Water N.M., Inc. v. New Mexico Pub. Util. Comm'n,* 121 N.M. 272, 277–78, 910 P.2d 906, 911–12 (1996). Although a municipality operates within its proprietary function when it owns and operates a water utility, it nevertheless is a governmental entity which otherwise performs governmental functions for the public. As such, our legislature in adopting the PUA recognized that municipalities operating utilities do so under restraints which substitute for those necessary to apply by regulation of privately-owned utilities to insure that they do not abuse the public interest.

{12} Because of these differences recognized by the statutory scheme, regulations of the PUC did not apply to the Town in providing a basis for its new rates. That is not to say that the Town could not have presented a fully allocated cost of service study, or other studies, required by the PUC, to justify the reasonableness of its rates. It had that alternative. Its only obligation, however, was to establish the reasonableness of the rates and their consistency with those of privately owned public utilities. The district court concluded that the Town met these obligations. Given Appellants' posture in this appeal, we affirm the district court.

*Whether the Town's Witness Qualified as an Expert on Water Rates*

{13} The Town tendered V. Phillip Soice as an expert on water rates, water utility operation, and water utility management. Appellants challenge only the district court's qualification of Soice as an expert on water rates.

{14} Rule 11–702 NMRA 1999 provides for admission of expert testimony. It states:

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

The district court determines whether an expert is qualified, and whether the expert's testimony will assist the trier of fact and be reliable. *See State v. Stills*, 1998–NMSC–009, ¶ 27, 125 N.M. 66, 957 P.2d 51. Appellants challenge only the district court's conclusion that Soice was qualified as an expert on water rates because Soice does not have a background in accounting or finance and he had only worked on two studies involving rate setting.

{15} We review the district court's determination for abuse of discretion. *See State v. McDonald*, 1998–NMSC–034, ¶ 19, 126 N.M. 44, 966 P.2d 752. A district court abuses its discretion when its decision is contrary to logic and reason, that is, its decision is unreasonable. *See Segal v. Goodman*, 115 N.M. 349, 356–57, 851 P.2d 471, 478–79 (1993).

{16} The district court "has wide discretion to determine whether a witness is qualified to give testimony as an expert," *McDonald*, 1998–NMSC–034, ¶ 19, 126 N.M. 44, 966 P.2d 752, and " 'no set criteria can be laid down to test [an expert's] qualifications.' " *Id.* (quoting *Smith v. Smith*, 114 N.M. 276, 281, 837 P.2d 869, 874 (Ct.App. 1992)). An expert can be qualified under a wide variety of bases: knowledge, skill, experience, training, or education. *See McDonald*, 1998–NMSC–034, ¶ 20, 126 N.M. 44, 966 P.2d 752. Soice testified that he had degrees in civil engineering and water resources engineering. He had worked in the water services field since 1986, and at the time of trial owned his own engineering consulting firm which consulted with municipalities on water use, including the areas of rates, quality, rights, planning, and sewer. We find no authority that requires an expert on water rates to have an accounting or finance background, and to the contrary, as noted above, we dictate no set criteria to qualify an expert.

{17} In this bench trial, the district court appropriately noted that Appellants' challenge addressed the weight to be given the expert testimony, which was subject to attack upon cross-examination. We conclude that the district court did not abuse its discretion in qualifying Soice as an expert on water rates.

*Conclusion*

{18} We affirm the decision of the district court.

{19} **IT IS SO ORDERED.**

DONNELLY and HARTZ, JJ., concur.