**Certiorari Granted, January 9, 2012, No. 33,182**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2012-NMCA-003**

**Filing Date: August 18, 2011**

**Docket No. 27,889**

**MOONGATE WATER COMPANY, INC.,**
a New Mexico public utility,

      **Plaintiff-Appellant/Cross-Appellee,**

**v.**

**CITY OF LAS CRUCES,**

      **Defendant-Appellee/Cross-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Robert E. Robles, District Judge**

Kyle W. Gesswein
Las Cruces, NM

William A. Walker, Jr.
Las Cruces, NM

for Appellant

Keleher & McLeod, P.A.
Spencer Reid
Thomas C. Bird
Kurt Wihl
S. Charles Archuleta
Albuquerque, NM

City of Las Cruces
Marcia B. Driggers, Assistant City Attorney
Las Cruces, NM

for Appellee

**OPINION**

**GARCIA, Judge.**

**{1}**     This appeal requires us to consider whether a certificate of public convenience and necessity (CCN) issued by the Public Regulatory Commission (PRC) grants a public utility exclusive service rights against a municipality with a population less than or equal to two hundred thousand people.  The district court granted summary judgment against the City of Las Cruces (the City) and found that the City's expansion into the service area of Moongate Water Co., Inc. (Moongate) constituted a partial taking of Moongate's exclusive property interest under its CCN.  After a subsequent evidentiary hearing, the district court found that the evidence did not support an award of damages to Moongate as a result of the taking. Moongate appeals the district court's damages determination, arguing that denying any value for the partial taking of its property interest was error and per se unconstitutional.  In a cross-appeal, the City contends that the district court erred by determining that Moongate's CCN granted it exclusive service rights against the City, and absent a right of exclusivity, the district court erred by concluding that a taking occurred.

**{2}**     We hold that the district court erred in determining that Moongate acquired exclusive service rights against the City through its CCN, and consequently, the court erred in awarding summary judgment to Moongate on the taking issues.  As a result, we reverse the district court's award of summary judgment in favor of Moongate on its claims of a partial taking of its property interest by inverse condemnation (Count II) and regulatory taking of that interest under constitutional taking clauses (Count III), and we remand for further proceedings consistent with this Opinion.  Because we reverse on these grounds, we do not reach the additional arguments raised by the parties on appeal.

**FACTUAL AND PROCEDURAL HISTORY**

**{3}**     Since 1983, Moongate has been a privately owned and regulated public utility company supplying water to rural residents in an unincorporated area referred to as the East Mesa and Organ Pass area on the outskirts of Las Cruces city limits, including Section 15. Over time, development in Section 15 required that Moongate expand its system by extending water lines and increasing water storage capacity within this area.

**{4}**     In 1995, the City began planning for population growth and city expansion on the East Mesa.  The City secured water rights through the State Engineer's Office and secured capital funding to build additional water servicing infrastructure.  In 2004 and 2005, the City also agreed to annex a portion of Section 15 as part of the development for three new subdivisions called Dos Sueños, Los Enamorados, and Rincón Mesa.  The City constructed the necessary water lines and infrastructure as part of its municipal water utility system and began servicing water to the residents as they requested service in the three new

2

subdivisions.

{5}     Subsequent to the City's annexation and development approval for the new subdivisions in Section 15, Moongate filed a complaint and an amended complaint against the City.  In Count I of the amended complaint, Moongate sought, among other things, a declaratory judgment stating that Moongate's CCN from the PRC gave it the exclusive right to provide water to the service area annexed by the City for the three new subdivisions.  In Count II, Moongate requested payment of just compensation for the City's partial taking of its property right pursuant to the inverse condemnation statute, NMSA 1978, § 42A-1-29(C) (1983).  Count III sought compensation for the regulatory taking of Moongate's property under the United States and New Mexico Constitutions.

{6}     The City moved for summary judgment on all three counts, arguing that the City's municipal water utility was not subject to PRC regulation, Moongate's CCN did not give it an exclusive right to serve the disputed area against the City, and no taking occurred as a result of the lawful competition between the City and Moongate.  Moongate subsequently filed a cross-motion for summary judgment on Counts II and III, arguing that Moongate was entitled to just compensation or damages as the result of the City's taking of Moongate's exclusive right to serve the disputed area.

{7}     The district court granted summary judgment in favor of Moongate on Counts II and III, and Moongate subsequently withdrew its claims for relief under Count I.  The court concluded that the City effectuated a taking of Moongate's property interest based upon the loss of Moongate's exclusive right to serve the relevant portion of Section 15 pursuant to its CCN.  The court reasoned that unless otherwise determined by the PRC, Moongate's CCN was a grant of exclusive territory under NMSA 1978, Section 62-9-1 (2005).  The court further interpreted NMSA 1978, Section 62-3-2.1(C) (1991), to prohibit the City from providing service in areas covered by Moongate's CCN until the City elected to be subject to the Public Utilities Act (PUA), NMSA 1978, Sections 62-1-1 to 62-6-28, 62-8-1 to 62-13-15 (1884, as amended through 2010), or exercised its authority to condemn the disputed area.  The court further determined that Moongate would be entitled to provide proof of any damages that resulted from the City's intrusion into Moongate's service area, and the court set the evidentiary portion of the damages question for a bench trial.

{8}     Thereafter, the district court proceeded with a bench trial to value the damages incurred by Moongate as a result of the taking of a portion of Moongate's exclusive CCN service area.  Ultimately, the district court determined that the evidence did not support a damages award to Moongate.

{9}     The City now appeals the district court's award of summary judgment in favor of Moongate on the taking issues in Counts II and III, arguing that the court erred as a matter of law in determining that Moongate's CCN granted it exclusive service rights against the City.  Moongate appeals the district court's determination that the evidence did not support a damages award.

**DISCUSSION**

3

**{10}** On appeal, the parties' arguments regarding whether the district court erred in awarding summary judgment to Moongate on the taking issues and Moongate's entitlement to damages depend upon interpretation of the PUA to determine whether Moongate's CCN granted Moongate the exclusive right to serve the disputed area against the City's water system.

**Standard of Review**

**{11}** Determining whether a CCN issued pursuant to the PUA extends exclusive service rights to a public utility against a municipal water system is a question of statutory interpretation that we review de novo. *See Pub. Serv. Co. of N.M. v. N.M. Pub. Util. Comm'n*, 1999-NMSC-040, ¶ 14, 128 N.M. 309, 992 P.2d 860 (stating that statutory interpretation is a question of law that we review de novo). "Our goal in interpreting a statute is to determine and give effect to legislative intent." *N.M. Bd. of Veterinary Med. v. Riegger*, 2007-NMSC-044, ¶ 11, 142 N.M. 248, 164 P.3d 947. In construing a statute, we first examine "the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different [meaning] was intended." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105. Additionally, "where several sections of a statute are involved, they must be read together so that all parts are given effect." *High Ridge Hinkle Joint Venture v. City of Albuquerque*, 1998-NMSC-050, ¶ 5, 126 N.M. 413, 970 P.2d 599. "When statutory language is clear and unambiguous, [the appellate courts] must give effect to that language and refrain from further statutory interpretation. Only if an ambiguity exists will we proceed further in our statutory construction analysis." *Marbob Energy Corp. v. N.M. Oil Conservation Comm'n*, 2009-NMSC-013, ¶ 9, 146 N.M. 24, 206 P.3d 135 (internal quotation marks and citation omitted).

**Applicability of the PUA to Municipal Water Systems**

**{12}** A municipality that owns or operates a water utility system is ordinarily authorized to furnish water outside its corporate boundaries pursuant to NMSA 1978, Section 3-27-8 (1965). However, this statutory authority is limited if the municipality is subject to the restrictions of the PUA, Sections 62-1-1 to -6-26.1 and 62-8-1 to -13-14. *Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 120 N.M. 579, 583, 904 P.2d 28, 32 (1995). The PUA is "a comprehensive regulatory scheme granting the PRC the policy-making authority to plan and coordinate the activities of New Mexico public utilities[.]" *Doña Ana Mut. Domestic Water Consumers Ass'n v. N.M. Pub. Regulation Comm'n*, 2006-NMSC-032, ¶ 16, 140 N.M. 6, 139 P.3d 166.

**{13}** The PUA expressly excludes a municipality from the definition of a "public utility," and a municipality is not subject to the operation of the PUA or any of its provisions unless an exception applies. Section 62-3-3(E), (G). The PUA provides that "[i]n the absence of voluntary election by a municipality to come within the provisions of the [PUA], *the municipality shall be expressly excluded from the operation of that act and from the operation of all its provisions*, and no such municipality shall for any purpose be considered a public utility[.]" Section 62-3-3(E) (emphasis added). Additionally, Section 62-6-4(A)

4

grants the PRC exclusive jurisdiction to regulate public utilities, but expressly provides that "[n]othing in this section . . . shall be deemed to confer upon the [PRC] power or jurisdiction to regulate or supervise the rates or service of any utility owned and operated by any municipal corporation."

{14}  Pursuant to Section 62-3-3(E), the first exception under which a municipality may be subject to the PUA is by voluntarily electing to subject itself to all of the provisions of the PUA under Section 62-6-5. *See Morningstar*, 120 N.M. at 588, 904 P.2d at 37 (recognizing that a municipality may choose to submit itself to full regulation by the PUA under Section 62-6-5). Section 62-6-5 provides that "[n]otwithstanding any of the provisions in Section 62-6-4 . . . , any municipality desiring to avail itself of all the benefits of the [PUA] . . . may elect to come within the provisions of that act."

{15}  In 1991, the Legislature amended the PUA to provide a second exception under which a municipality may be subject to PUA under limited circumstances. *See* 1991 N.M. Laws, ch. 143, §§ 1, 2 (codified as Section 62-3-2.1 and Section 62-9-1.1). Section 62-3-2.1(C) states that "[t]he following are declared to be the objects and purposes" of the 1991 amendment:

> Experience has proven that the construction, development and extension of proper plants and facilities cannot be accomplished without unnecessary duplication and economic waste within areas certificated to water . . . utilities without controls against duplicative intrusions into certificated areas by municipal utilities. A rational basis exists to prohibit intrusion of municipal water . . . facilities or service into areas in which a public utility furnishes regulated services until that municipality elects to come within the terms of the [PUA], in which event both systems will be brought into parity of treatment with respect to the [PRC's] independent jurisdiction and power to prevent unreasonable interference between competing plants, lines and systems. Without such controls as provided by Section 62-9-1.1 . . ., the declared policy of the [PUA], the provision of reasonable and proper utility services at fair, just and reasonable rates and the general welfare, business and industry of the state may be frustrated.

{16}  Additionally, Section 62-9-1.1(A) and (B) provides that "[n]otwithstanding any other provision of the [PUA]," the PRC has authority and jurisdiction to determine whether a municipal water system would intrude into the public utility's CCN and to order the municipality to "cease and desist" from continued construction. However, Section 62-9-1.1(C) specifies that "[f]or purposes of this section, 'municipality' means any municipality that has a population of more than two hundred thousand . . . and is located in a class A county." As a result, our Supreme Court has interpreted Section 62-9-1.1 to provide the PRC with limited jurisdiction if a municipality with a population exceeding two hundred thousand intrudes into an area covered by a public utility's CCN. *Morningstar*, 120 N.M. at 588, 904 P.2d at 37.

{17}  It is undisputed that the City has not elected to be subject to the PUA and that the

City's population does not exceed two hundred thousand. Consequently, the City argues that the City is not subject to the PUA or jurisdiction by the PRC. However, Moongate contends that Section 62-3-2.1(C) prohibits all municipalities from intruding into an area covered by a public utility's CCN until the municipality elects to come within the terms of the PUA. Moongate further argues that Section 62-9-1.1 is a special provision that places the City of Albuquerque under limited PRC jurisdiction even in the absence of such an election.

**{18}** We interpret the plain language of Section 62-3-2.1(C) to explain the purpose behind the Section 62-9-1.1 exception for large municipalities. However, Section 62-3-2.1(C) does not create an additional exception applicable to all municipalities. Section 62-3-2.1(C) begins by stating that "[t]he following are declared to be the *objects and purposes*" of this 1991 amendment. (Emphasis added.) Section 62-3-2.1(C) then explains that based on experience, "*[a] rational basis exists to prohibit intrusion* of municipal water . . . facilities or service" into areas served by a public utility pursuant to a CCN. (Emphasis added.) Although Section 62-3-2.1(C) explains that "a rational basis exists" for prohibiting municipal water utilities from intruding into CCN areas, Section 62-3-2.1(C) does not contain any operative language that actually prohibits municipal water utilities from serving those areas. Instead, Section 62-3-2.1(C) identifies Section 62-9-1.1 as the operative control on intrusions by municipal utilities. *See* § 62-3-2.1(C) (stating that "[w]ithout such controls as provided by Section 62-9-1.1," the policies of the PUA may be frustrated). As a result, we interpret Section 62-3-2.1(C) to explain the Legislature's intent in enacting Section 62-9-1.1. However, absent language providing the PRC with additional authority over municipalities, we determine that Section 62-3-2.1(C) does not further expand the scope of the PUA or the PRC's jurisdiction over municipalities beyond those controls it identifies in Section 62-9-1.1. *See El Paso Elec. Co. v. N.M. Pub. Regulation Comm'n*, 2010-NMSC-048, ¶ 6, 149 N.M. 174, 246 P.3d 443 (stating that the PRC "may exercise only its statutorily authorized jurisdiction").

**{19}** In *Morningstar*, a water association similarly argued that a small municipality was subject to the PUA's prohibition against intrusion into a public utility's service area. 120 N.M. at 583, 904 P.2d at 32. However, our Supreme Court determined that neither party was a "public utility" for purposes of the PUA. *Id.* at 588, 904 P.2d at 37. In pertinent part, the Court reasoned that "[u]nder Section 62-3-3(E), with two exceptions, all municipal water facilities are excluded from the PUA." *Morningstar*, 120 N.M. at 588, 904 P.2d at 37. Consequently, the Court held that the small municipality was not subject to the PUA or PRC jurisdiction since the municipality had not elected to be subject to the PUA and did not have a population exceeding two hundred thousand. *Id.* We similarly conclude that the City's municipal water utility is not subject to the PUA or PRC jurisdiction. Absent PRC jurisdiction, we note that jurisdiction before the district court was proper, and this Court has jurisdiction over the appeal. *See Fleming v. Town of Silver City*, 1999-NMCA-149, ¶¶ 2, 7, 128 N.M. 295, 992 P.2d 308 (concluding that jurisdiction before the district court and appellate jurisdiction before this Court were proper where a small municipality was not subject to PUA regulation).

**{20}** To the extent that Moongate argues that Section 62-3-2.1(C) is ambiguous regarding whether it applies to all municipalities, we recognize that any exception subjecting a

6

municipality to the PUA must be explicit. In *Morningstar*, our Supreme Court noted that the plain language of Section 62-3-3(E) "could not be more explicit" in stating that "[n]o such municipality shall *for any purpose* be considered a public utility." *Morningstar*, 120 N.M. at 588, 904 P.2d at 37 (internal quotation marks and citation omitted). The Court further reasoned that "[o]nce something is defined out of a statute it cannot, without an unambiguous and specific provision, be brought back in." *Id.* at 589, 904 P.2d at 38. Finally, the Court reasoned that the two unambiguous exceptions subjecting municipalities to the PUA "show that when the [L]egislature intended the PUA to apply to municipalities it did so explicitly." *Id.* As a result, the Court concluded that any ambiguity in Section 62-9-1 did not create an exception subjecting small, non-certificated municipalities to the PUA. *Morningstar*, 120 N.M. at 589, 904 P.2d at 38.

**{21}** Unlike the two recognized exceptions under which a municipality is subject to the PUA, Section 62-3-2.1(C) does not contain explicit language indicating that it is creating an exception to the general exclusion of municipalities from the PUA. *See* § 62-6-5 (stating that "[n]otwithstanding any of the provisions in Section 62-6-4," a municipality may elect to be subject to the PUA); § 62-9-1.1(A), (C) (stating that "[n]otwithstanding any other provision of the [PUA]," the PRC has the authority and jurisdiction over a municipality with a population exceeding two hundred thousand that intrudes into a CCN area). Moreover, unlike the two recognized exceptions, Section 62-3-2.1(C) does not contain explicit language subjecting a municipality to the PUA or PRC jurisdiction. *See* § 62-6-5 (stating that when a municipality elects to avail itself of the benefits of the PUA, "it shall be subject to all the provisions of the [PUA]"); § 62-9-1.1(A), (C) (providing that Section 62-9-1.1(A) confers additional PRC "authority and jurisdiction" over municipalities with a population exceeding two hundred thousand). As a result, we conclude that Section 62-3-2.1(C) identifies a public policy concern but lacks the explicit language required to create an additional exception subjecting small municipalities to the PUA or to PRC jurisdiction established under the PUA.

**{22}** Moongate also relies on *Doña Ana*, 2006-NMSC-032, for the proposition that issuing a CCN to a public utility creates a presumption of exclusive service rights pursuant to Section 62-9-1. *Doña Ana* is distinguishable because it addressed the issue of an intrusion by one regulated utility into the CCN area of another regulated utility. 2006-NMSC-032, ¶¶ 3, 6, 8 n.1 (noting that the PRC had jurisdiction since the dispute was between a regulated public utility and a regulated mutual domestic water association). Our Supreme Court has previously recognized that "[o]nly utilities that fall within the [PRC's] regulatory jurisdiction can obtain territorial protection under Section 62-9-1 or Section 62-9-1.1." *Morningstar*, 120 N.M. at 590, 904 P.2d at 39. As a result, granting a CCN to a public utility only protects that utility "from intrusion by another certificated utility, or by a non-certificated municipality with a population exceeding two hundred thousand[.]" *Id.* (citation omitted).

**{23}** Moongate argues that interpreting Section 62-3-2.1(C) to prohibit intrusions by only large municipalities would frustrate the Legislature's intent of encouraging investment by public utilities and preventing the economic waste caused by duplicative municipal water service in CCN areas. We recognize that Section 62-3-2.1(D) requires that the provisions of the PUA and its 1991 amendment "be liberally construed to carry out their purposes."

7

However, because the plain language of Section 62-3-2.1(C) and Section 62-9-1.1 limits the scope of the 1991 amendment to municipalities with a population exceeding two hundred thousand, we do not proceed beyond a plain language analysis. *See Marbob Energy Corp.*, 2009-NMSC-013, ¶ 9 (concluding that "[w]hen statutory language is clear and unambiguous, [the appellate courts] must give effect to that language and refrain from further statutory interpretation") (internal quotation marks and citation omitted). We further note that the creation of any new exception subjecting small municipalities to the PUA is within the purview of the Legislature and not this Court. *See Hartford Ins. Co. v. Cline*, 2006-NMSC-033, ¶ 15, 140 N.M. 16, 139 P.3d 176 (reasoning that it is the duty of the Legislature to make laws and the duty of the courts to expound them).

**{24}**   In *Public Service Co. of New Mexico*, 1999-NMSC-040, ¶ 21, our Supreme Court rejected a public utility's similar argument that excluding a small municipality from the PUA would frustrate the Legislature's explicit policy of promoting efficient power grids in New Mexico. The Court reasoned that it was "unpersuaded . . . that the express policy [statement] should be read so broadly as to offend the plain language of Section 62-3-3(E)[.]" *Pub. Serv. Co. of N.M.*, 1999-NMSC-040, ¶ 21. Similarly, we reject Moongate's argument that the Legislature's express policy statement in Section 62-3-2.1(C) overcomes the plain language of Section 62-3-3(E) excluding municipalities from the PUA. Accordingly, we conclude that Moongate's CCN did not grant Moongate exclusive service rights against the City's water utility.

**Summary Judgment Regarding the Taking Issues and Moongate's Entitlement to Damages**

**{25}**   The district court concluded that Moongate was entitled to summary judgment as a matter of law on Counts II and III based upon Moongate's exclusive right to serve the disputed area. The City contends, however, that since Moongate did not have exclusive service rights against the City, the district court erred by awarding summary judgment to Moongate on the taking issues and determining that Moongate was entitled to any proven damages.

**{26}**   Summary judgment was appropriate in this case if there were no genuine issues of material fact, and Moongate was entitled to judgment as a matter of law. *See Self v. United Parcel Serv., Inc.*, 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582. In a motion for summary judgment, the movant has the initial burden of establishing a prima facie case for summary judgment. *Romero v. Philip Morris, Inc.*, 2010-NMSC-035, ¶ 10, 148 N.M. 713, 242 P.3d 280. "Once this prima facie showing has been made, the burden shifts to the non-movant to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Id.* (internal quotation marks and citation omitted). "Because resolution on the merits is favored, a reviewing court view[s] the facts in a light most favorable to the party opposing the motion and draw[s] all reasonable inferences in support of a trial on the merits." *Edward C. v. City of Albuquerque*, 2010-NMSC-043, ¶ 43, 148 N.M. 646, 241 P.3d 1086 (alterations in original) (internal quotation marks and citation omitted).

**{27}**   Moongate argues that it was entitled to summary judgment as a matter of law because

its CCN gave Moongate exclusive service rights in the disputed area. However, Moongate did not provide any argument or authority either below or on appeal that summary judgment was appropriate absent the exclusivity of its service rights against the City. As a result of our determination that Moongate's CCN did not grant Moongate exclusive service rights against the City, we conclude that Moongate failed to meet its burden of establishing a prima facie case that it was entitled to summary judgment. Consequently, we hold that the district court erred in granting summary judgment to Moongate on Counts II and III.

**CONCLUSION**

**{28}** For the foregoing reasons, we reverse the district court's award of summary judgment to Moongate on Counts II and III, and we remand to the district court for further proceedings consistent with this Opinion.

**{29}    IT IS SO ORDERED.**

<br>

**TIMOTHY L. GARCIA, Judge**

**I CONCUR:**

<br>

**MICHAEL E. VIGIL, Judge**

**JONATHAN B. SUTIN, Judge (specially concurring).**

**{30}** I acknowledge *Morningstar*'s view of Section 62-9-1.1(A) and (C). *Morningstar*, 120 N.M. at 588, 904 P.2d at 37. I will not attempt to distinguish *Morningstar* based on its facts. Our Opinion here with its analyses, in which I concur, solidifies, with *Morningstar*, Section 62-9-1.1(C) as limiting to large municipalities the broad policy and intent of Section 62-3-2.1(C) and the operative effect of Section 62-9-1.1(A). I am nevertheless puzzled as to why the Legislature went to the trouble of enacting Sections 62-3-2.1(C) and 62-9-1.1(A). These two provisions unmistakably and elaborately express a purpose and set in motion an operative administrative process designed to protect public utilities from municipal encroachment into a public utility's CCN area. Had the Legislature had in mind their applicability only to large municipalities, one would think that when enacting these two provisions, the Legislature would have approached the language in the provisions or the statutory framework much differently. What comes to mind is that the Legislature giveth and the Legislature taketh away, and we cannot question the wisdom of these enactments. I am, however, impressed that legislative silence after *Morningstar* would appear to indicate that the Legislature agrees with the statements in *Morningstar* and is satisfied that Section 62-9-1.1(C) was intended to limit the operative effect of Section 62-9-1.1(A) to large municipalities.

<br>

**JONATHAN B. SUTIN, Judge**

9

**Topic Index for *Moongate Water Co., Inc. v. City of Las Cruces*, No. 27,889**

| | |
|---|---|
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CP** | **CIVIL PROCEDURE** |
| CP-SJ | Summary Judgment |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-TC | Taking Without Compensation |
| | |
| **GV** | **GOVERNMENT** |
| GV-MU | Municipalities |
| GV-RA | Regulatory Authority |
| GV-WS | Water and Waste Systems |
| | |
| **PU** | **PUBLIC UTILITIES AND COMMUNICATIONS** |
| PU-PU | Public Utilities, General |
| PU-RM | Rate Making |
| PU-RU | Rule Making |
| | |
| **RE** | **REMEDIES** |
| RE-DG | Damages, General |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |