This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-37727**

**STATE OF NEW MEXICO ex rel.
CHILDREN, YOUTH & FAMILIES
DEPARTMENT,**

Petitioner-Appellee,

v.

**DONNA E. and HARLEY E.,**

Respondents-Appellants,

and

**IN THE MATTER OF SARAI E.,**

Child.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY
Raymond L. Romero, District Judge**

Children, Youth & Families Department
Rebecca J. Liggett, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

For Appellee

Rabern Law
Trace L. Rabern
Santa Fe, NM

for Appellants

Jared G. Kallunki
Roswell, NM

Guardian Ad Litem

## DECISION

**DUFFY, Judge.**

**{1}** This is the second appeal in this nine-year-long abuse and neglect case. *See State ex rel. Children, Youth & Families Dep't v. Donna E.*, 2017-NMCA-088, 406 P.3d 1033. Respondents Donna E. and Harley E. (Parents) filed this appeal seeking review of two orders entered by the district court after we remanded the matter for further proceedings. The first is the district court's order denying their motion seeking recusal of the trial judge. The second is the district court's order on the best interest hearing regarding S.E. (Daughter), in which the court awarded custody of Daughter to the Children, Youth, and Families Department (CYFD) and ordered that contact between Parents and Daughter shall not be reestablished. We affirm.

## BACKGROUND

**{2}** This case began in 2010 when CYFD filed a petition alleging that Parents abused and neglected their children, Daughter and Stephen E. (Son). The district court terminated Parents' parental rights as to Daughter in August 2015. In Parents' first appeal, we reversed the district court's TPR order and remanded to the district court with instructions to decide on a custody arrangement for Daughter based on Daughter's best interests. *Id.* ¶¶ 65-70, 74.

**{3}** Our mandate to the district court issued on November 16, 2017. Shortly thereafter, Parents filed a motion seeking recusal of the district judge, arguing that they had filed a separate federal lawsuit in which the district judge may be called as a witness, and suggested that the district judge's impartiality may be questioned after having been reversed by this Court. The district court denied the motion. In April 2018, pursuant to our mandate, the district court conducted a two-day hearing to determine a custody arrangement in the best interests of Daughter. Following the hearing, the district court entered forty-seven pages of findings and conclusions and ultimately determined that (1) extraordinary circumstances exist; (2) Parents exhibited serious parental inadequacies; (3) Parents have engaged in gross misconduct; (4) contact between Parents and Daughter has been so minimal that Daughter has significantly bonded with her foster parents; and (5) a healthy psychological relationship between Parents and Daughter cannot be restored. Based on these findings, the court determined that maintaining Daughter in the custody of CYFD was in Daughter's best interest, and further ordered that contact between Parents and Daughter shall not be reestablished. We discuss additional facts as they become relevant to our analysis.

## DISCUSSION

## I.      Parents' Due Process Arguments

**{4}**      On appeal, Parents do not challenge the district court's decision to award custody of Daughter to CYFD, but instead, ask us to reverse the no-contact provision of the district court's order so they can "be in the life of [Daughter]." Parents raise a variety of arguments with respect to the district court's handling of the case on remand, all framed as violations of their right to due process. As we understand them, Parents' arguments are that (1) due process requires that Parents be given an opportunity to re-establish a parent-child relationship with Daughter; (2) CYFD never provided fair notice of what specific changes Parents needed to make to alleviate the causes and conditions of neglect; (3) extraordinary circumstances that are not the fault of Parents do not suffice to justify continued or permanent no-contact; and (4) aside from the deterioration of the parent-child relationship as a result of the lack of contact, Parents argue that all other evidence presented in this case to justify the no-contact provision was eight years' stale.

### A.      The Best Interests Standard

**{5}**      We begin by addressing Parents' argument that due process requires that they be permitted to re-establish contact with Daughter. In their supplemental brief, Parents argue that "[it] cannot comport with constitutional due process for the [district] court judge to be able to do with this 'best interest' hearing what he did not have adequate basis to do under the [termination of parental rights] statute—to doom the parent-child relationship." Parents, in essence, suggest the district court had no discretion to withhold contact or custody on remand, or, stated differently, that following a reversal of an order terminating parental rights, a parent must be reunified with or permitted contact with their child as a matter of law in order to allow the parent to preserve the parent-child relationship.

**{6}**      Our Supreme Court, however, has considered and rejected this position. In New Mexico, "[a] finding that parental rights were improperly terminated does not mechanically result in the award of custody to the biological parents." *In re Adoption of J.J.B.*, 1995-NMSC-026, ¶ 57, 119 N.M. 638, 894 P.2d 994 ("The termination of parental rights and the determination of custody are different issues and must be addressed separately."). Instead, in cases where a termination order is reversed, the district court must consider what custody arrangement is in the child's best interests. *Donna E.*, 2017-NMCA-088, ¶ 66. Our Supreme Court rejected an approach in which "the child's best interests are defined entirely by the rights of the natural parents when parental rights have been improperly terminated." *Id.* ¶ 56. Instead, we have acknowledged that "an automatic return of a child to his or her parent following a reversal . . . is [not] necessarily in the child's best interests, particularly where, as in the present case, the parent has not had actual custody of [the c]hild for a number of years." *State ex rel. Children, Youth & Families Dep't. v. Benjamin O.*, 2007-NMCA-070, ¶ 35, 141 N.M. 692, 160 P.3d 601.

**{7}**    Even though Parents argue that they have fundamental rights and privileges as Daughter's biological parents, Daughter's best interests nevertheless take precedence. *J.J.B.*, 1995-NMSC-026, ¶ 58 ("Custody based upon the biological parent-child relationship may be at odds with the best interests of the child. When that happens, the best interests of the child must prevail."); *Donna E.*, 2017-NMCA-088, ¶ 66 (stating that "any such parental right is secondary to the best interest and welfare of [the child]"). Whether Parents were entitled to custody of or contact with Daughter following our remand ultimately turned on the district court's evaluation of whether that contact was in Daughter's best interests. *Donna E.*, 2017-NMCA-088, ¶ 70 (instructing the district court that its "primary consideration is 'to provide for the care, protection and wholesome mental and physical development' of Daughter"); *see also J.J.B.*, 1995-NMSC-026, ¶ 65 ("The child's best interests involve an evaluation of the child's physical, intellectual, and moral well being.").

**{8}**    To determine what custody arrangement served Daughters' best interests, the district court was required to decide whether and to what extent Parents are fit to care for Daughter and whether they are capable of reestablishing a healthy parent-child relationship with Daughter, given that Parents had not had contact with Daughter since July 2011—a period of almost seven years at the time. *See Donna E.*, 2017-NMCA-088, ¶¶ 18, 67-70. Following the framework articulated by our Supreme Court in *J.J.B.*, we instructed the district court on remand to "consider whether there are extraordinary circumstances that warrant depriving [Parents] of custody." *Donna E.*, 2017-NMCA-088, ¶ 67. We noted that extraordinary circumstances include (1) a showing of serious parental inadequacy with clear and convincing evidence—specifically, evidence of gross misconduct such as incapacity, moral delinquency, instability of character, or the inability to provide Daughter with needed care; and, (2) whether Daughter's contact with Parents has been so minimal that she has significantly bonded with her foster parents, and consideration of whether a healthy psychological parent-child relationship can be restored between Parents and Daughter. *Id.* ¶¶ 68-69. After conducting a two-day hearing, the district court concluded that extraordinary circumstances—both serious parental inadequacy and minimal contact with Parents/significant bonding with Daughter's foster parents—justified awarding custody to CYFD and severing contact between Parents and Daughter. Parents have not challenged the sufficiency of the evidence supporting any of the court's findings on appeal. *See Robey v. Parnell*, 2017-NMCA-038, ¶ 22, 392 P.3d 642 ("An unchallenged finding of the trial court is binding on appeal.").

## B.    Minimal Contact Between Child and Parents

**{9}**    The district court found that Parents should not have custody of or contact with Daughter in part because Daughter's contact with Parents has been so minimal that she has significantly bonded with her foster parents, and a healthy psychological parent-child relationship cannot be restored. Parents argue that their relationship with Daughter was destroyed as a result of CYFD's missteps during the first five years of these proceedings. As we noted in the prior appeal,

In this case, Children were taken into custody in June 2010. Over the course of the next year, the court held regular reviews, visits with Daughter were progressing, and [Parents] had eventually progressed to unsupervised overnight weekend visits. Despite the fact that there were no documented issues with Daughter's visitation, all visitation with Daughter was suspended in July 2011 after a hearing in which a detective testified that some of the pornographic images found on [Parents'] computer appeared to include individuals under the age of eighteen.

*Donna E.*, 2017-NMCA-088, ¶ 59. Parents have been denied contact with Daughter continuously since July 2011. *Id.* ¶ 63. We also noted our concern with the fact that "all visitation, including supervised visitation, with Daughter was revoked based on an allegation and withheld for years while CYFD attempted to substantiate that allegation . . . . [and] this separation allowed Daughter to lose all memory of [Parents] after years of no contact." *Id.*

**{10}**    In this appeal, Parents challenge whether a no-contact order can be predicated on their lack of contact with Daughter when CYFD was at fault for causing the deterioration of the parent-child relationship. Notwithstanding the troubling course of these proceedings over the last eight years, our Supreme Court has made clear that custody may be withheld from a biological parent if the parent-child relationship cannot be restored, regardless of whether the deterioration in the parent-child relationship was involuntary. *J.J.B.*, 1995-NMSC-026, ¶ 61 ("[T]the child may be so long in the custody of the nonparent that, even though there has been no abandonment or persisting neglect by the parent, the psychological trauma of removal is grave enough to threaten destruction of the child." (internal quotation marks and citation omitted)); *id.* ¶ 68 ("the biological parent, though not unfit and not responsible for the disintegration of the parent-child relationship, may still be incapable of reestablishing the necessary parental bond with the child."); *Benjamin O.*, 2007-NMCA-070, ¶ 36 (noting that "even if a parent is fit, a court may deny custody . . . . where, after a long separation between parent and child, the necessary parent-child bond has disintegrated"). The district court's singular task on remand was to determine a course of action that would cause the least amount of harm to Daughter. *J.J.B.*, 1995-NMSC-026, ¶ 65 ("The case before us offers no truly acceptable choice. Instead, we must be resigned to a solution that causes the least amount of harm.").

**{11}**    Parents did not address our Supreme Court's holding in *J.J.B.*, nor have they argued that the district court erred in applying *J.J.B.* or that there is a basis for departing from its holding on appeal. They dedicated only two paragraphs to this point in their brief and did not develop their argument with any legal analysis or citation to authority. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (stating that we will not review unclear arguments or guess at what a party's arguments might be as "we are not required to surmise what argument is being made where a brief is unclear"); *see also In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority, counsel after diligent search, was unable to find any supporting

authority. We therefore will not do this research for counsel. Issues raised in appellate briefs which are unsupported by cited authority will not be reviewed by us on appeal." (internal citations omitted)).

**{12}**     Our review of the record demonstrates the district court properly applied *J.J.B.* and considered both Daughter's bond with her foster family and the likelihood that Parents could establish a healthy parent-child bond with Daughter. Contact between Daughter and Parents ceased when she was just over three years old, and the district court found that Daughter has "no real memories of her biological family members." The district court found that Daughter had significantly bonded with her foster parents. She calls them "mom" and "dad," and calls her foster siblings "brothers and sisters." "Because of [Daughter]'s current relationship with [her foster family], she would need intervention from a bonding specialist for a significant period of time before any decision should even be made about whether to reintroduce her to [Parents]." The district court also made a number of findings regarding Parents' likelihood of re-establishing a healthy psychological parent-child relationship with Daughter and ultimately concluded that it was not possible.

**{13}**     Based on the district court's unchallenged findings, we perceive no abuse of discretion in its order, given the prolonged separation and district court's extensive findings on Daughter's bond with her foster family and Parent's inability to reestablish the necessary parental bond with Daughter. *Robey v. Parnell*, 2017-NMCA-038, ¶ 22.

## C.     Serious Parental Inadequacy

**{14}**     The district court also found that custody should be denied because Parents exhibit serious parental inadequacy. *See Donna E.*, 2017-NMCA-088, ¶ 69 (instructing the district court that in determining whether there is serious parental inadequacy, is should consider "whether there is clear and convincing evidence of gross misconduct such as incapacity, moral delinquency, instability of character, or inability to provide Daughter with needed care" (alteration, internal quotation marks, and citation omitted)). Parents assert that the district court's findings are based on stale evidence. As with their previous argument, this argument is brief and materially undeveloped. *Headley*, 2005-NMCA-045, ¶ 15. Nevertheless, we reject the argument on the merits because the district court did not err in considering evidence from the duration of the abuse and neglect proceedings, and because the district court relied on current evidence of Parents' conduct in reaching its decision.

**{15}**     Although they fail to challenge the sufficiency of the evidence supporting any particular finding of fact, *see* Rule 12-318(A)(4), Parents argue the district court's no-contact order was improperly based on its "outrage of computer porn that was in the home back in 2010[,]" and that the district court improperly "framed [Parents'] present-day failing as 'failing to take responsibility' for what happened in 2010." Parents rely on cases involving the termination of parental rights where this Court addressed whether there was clear and convincing evidence that the causes and conditions of neglect were unlikely to change in the foreseeable future. *See State ex rel. Dep't of Human Servs. v.*

*Nat. Mother*, 1981-NMCA-103, ¶ 9, 96 N.M. 677, 634 P.2d 699; *State ex rel. Children, Youth & Families Dep't v. Hector C.*, 2008-NMCA-079, ¶¶ 3-9, 144 N.M. 222, 185 P.3d 1072. In both cases, evidence of parental inadequacy was rendered stale by later evidence of the parents' lifestyle changes such that the earlier evidence was not useful in assessing whether the conditions persisted at the time of the hearing or would persist into the future. *See Nat. Mother*, 1981-NMCA-103, ¶ 9. Here, unlike in *Nat. Mother* and *Hector C.*, Parents do not point to any facts or evidence suggesting that their circumstances or abilities had changed and improved in any similar way. *Cf. State ex rel. Children, Youth & Families Dep't v. Nathan H.*, 2016-NMCA-043, ¶ 41, 370 P.3d 782 (holding that a father's past conduct was "still relevant to his current parental abilities" where he had "not changed his situation in any meaningful way").

{16}    Moreover, in Parents' last appeal, we affirmatively encouraged the district court to consider evidence presented at the termination hearing on March 25, 2015, because Parents continue to have custody rights to Son. *Donna E.*, 2017-NMCA-088, ¶ 70 ("We urge the district court to become reacquainted with the evidence presented at the termination hearing regarding the trauma suffered by [Son], the behaviors learned and exhibited by [Son], and Parents' role in any abuse and neglect of [Daughter and Son]"). The district court followed our instructions and made the following findings: (1) Parents "took no affirmative action to prevent [Harley Jr., then age seventeen] from accessing pornography on the family computer, or from continuing to expose [Son] to pornography even after they became aware that such activity was occurring and was causing [Son] to act out sexually"; (2) Parents failed to take action to protect Son and Daughter after learning that Harley Jr. was sexually assaulting Son; (3) [Mother] encouraged Son to masturbate and commented on his genitalia during a Sexual Assault Nurse Examiner (SANE) examination; and (4) Parents "had child pornography on their family computer."

{17}    The district court's order was also soundly supported by current evidence of Parents' conduct since the last appeal. The district court found that Parents "refused to address their behaviors which resulted in their abuse of Son," followed by over nineteen pages describing in detail the history of therapists' efforts to engage with Parents on this issue. The majority of its findings addressed the two-year period immediately before the best-interests hearing:

> [Parents] have, for over two years now, been ordered to directly address issues which have been raised by their, not Harley Jr.'s, actions and behavior. [Parents], however, believe [Son] lied to his therapists and deny they engaged in any abusive conduct toward [Son], they deny and minimize the extent of his abuse by Harley Jr. and others, [Mother] denies her behavior and statements at [Son]'s SANE exam, and [Father] believes the matter was just the product of "communication problem." As such, [Parents] will not accept any therapeutic services which focus on them as perpetrators of [Son]'s abuse. Their resistance precludes them from effectively progressing to a point where the children can safely be returned to their custody.

Based on Mother's testimony at the best interests hearing, the district court found that Mother "believes [Son's] behavior at the SANE exam was motivated only by his desire to get attention." The district court found that Parents continue to "deny knowledge of, and minimize the abuse suffered by [Son] at the hands of [Parents' oldest son,] Harley Jr." The district court was concerned by Parents' continuing failure, as of the best-interests hearing, to acknowledge or address that behavior.

**{18}** The district court also found that Parents "are unable to provide a safe and clean living arrangement for [Daughter], have no insight into this fact, and refuse to allow CYFD to inspect their home." Daughter and Son "were taken into CYFD custody [in 2010] in part because their home was very filthy and in an unsanitary living condition." Based on the testimony of the CYFD worker at the best-interests hearing, "[t]he bedroom that would be [Daughter]'s if she were returned home is used by [Parents] as a storage room. Items therein are piled approximately four and a half feet high, and there is no room for furniture, and no path into the room." The living room and garage were also cluttered. The CYFD worker testified that in January 2018, she tried to encourage [Mother] to clean the home one area at a time, but that Mother "became noticeably agitated and uncomfortable."

**{19}** Parents refused to take responsibility for the home conditions. The district court found that Parents "do not acknowledge the current condition of their home or the problems it poses for return of the children, and have not made any progress on rectifying the problem within the last year." Despite having been ordered to allow a CYFD permanency placement worker to inspect their home, Parents "refused to allow CYFD access to their home for scheduled and unscheduled visits." The district court found that "[w]ithout such access, CYFD is unable to determine whether [Parents] are capable of keeping the home in a clean and safe condition."

**{20}** This evidence is particularly important in this case, as CYFD presented evidence that Daughter was especially sensitive to clutter and disorganization. Based on the testimony of Amber Dollar, Daughter's therapist as of December 2017, the district court found that Daughter is "very well organized, very detailed, likes to see everything in its place, and has a need and desire for structure in her life." Daughter "likes to keep her room 'very neat,' likes to have structure and routine in her life, and does not handle the lack thereof very well." The district court found that Parents' home "would not provide a healthy environment for [Daughter]. She would be thinking about how she needs to organize and get things in order, which would cause anxiety."

**{21}** The district court concluded, based on these findings, that there was clear and convincing evidence of gross misconduct such as incapacity, moral delinquency, instability of character, or inability to provide Daughter with needed care. *See Donna E.*, 2017-NMCA-088, ¶ 69. Consequently, the district court did not abuse its discretion in concluding that extraordinary circumstances justified awarding custody of Daughter to CYFD over objections of Parents, and we perceive no basis for reversing the district court's no contact provision on appeal.

## II.     Motion to Recuse

**{22}**     Parents also argue that the trial judge was so embroiled in the controversy that he could not fairly and objectively conduct the best-interests hearing on remand and should have recused himself. *See State v. Riordan*, 2009-NMSC-022, ¶ 14, 146 N.M. 281, 209 P.3d 773 ("recusal is only required when a judge has become so embroiled in the controversy that he cannot fairly and objectively hear the case" (internal quotation marks and citation omitted)). CYFD argues that Parents did not preserve the arguments they raise on appeal. *Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 14, 137 N.M. 26, 106 P.3d 1273 ("[O]n appeal, the party must specifically point out where, in the record, the party invoked the court's ruling on the issue."); *see also* Rule 12-318(A)(4) NMRA (providing that the brief in chief must contain, with respect to each issue presented, a "statement explaining how the issue was preserved in the court below[.]").

**{23}**     In Parents' motion for recusal, they argued that they had named the district judge as a witness in a separate federal lawsuit and asserted generally that it would "give an appearance of impropriety that the Judge's impartiality might reasonably be questioned" if the judge continued to preside over Parents' case after having been reversed by this Court. Parents did not brief or renew those arguments on appeal. *See Fleming v. Town of Silver City*, 1999-NMCA-149, ¶ 3, 128 N.M. 295, 992 P.2d 308 (stating that issues not argued in the brief in chief are deemed abandoned); *see also Riordan*, 2009-NMSC-022, ¶ 14 (stating that threats against the judge do not automatically require recusal); *United Nuclear Corp. v. Gen. Atomic Co.*, 1980-NMSC-094, ¶ 425, 96 N.M. 155, 629 P.2d 231 ("Rulings adverse to a party do not necessarily evince a personal bias or prejudice on the part of the judge against it even if the rulings are later found to have been legally incorrect.").

**{24}**     Instead, Parents now argue the district court was "obsessed" with the porn on the family computer, a finding made by the district court in 2015 and which remains unchallenged in this appeal. *See United Nuclear Corp.*, 1980-NMSC-094, ¶ 418 (stating that "[t]he alleged bias and prejudice . . . must . . . result in an opinion on the merits on some basis other than what the judge learned from his participation in the case"). Parents, however, did not see a reason to seek recusal until after the district court had ruled against them at the termination hearing. *Cf. State v. Hernandez*, 1993-NMSC-007, ¶ 44, 115 N.M. 6, 846 P.2d 312 ("Because Defendant did not think that recusal of the trial judge was necessary until after an adverse ruling, we hold that the trial judge did not abuse his discretion by declining to recuse himself."). And contrary to Parents' assertion that the district judge did not do, and was not capable of doing, the nuanced analysis required of the best interests evaluation on remand, the record demonstrates that the district judge conducted a two-day hearing on Daughter's best interest, heard testimony and received evidence from a number of witnesses, and afterward, made detailed, thorough findings on each aspect of the analysis, none of which Parents challenge on appeal.

**{25}** Parents have not demonstrated an abuse of discretion requiring reversal. *Riordan*, 2009-NMSC-022, ¶ 6 ("[R]ecusal rests within the discretion of the trial judge, and will only be reversed upon a showing of an abuse of that discretion."). *Hernandez*, 1993-NMSC-007, ¶ 43 ("Voluntary recusal is reserved for compelling constitutional, statutory, or ethical reasons because a judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified." (alterations, internal quotation marks and citation omitted)). "Because [the movants] failed to meet [their] burden of establishing that [the judge] had a personal or extrajudicial bias or prejudice against [them], the judge properly refused to disqualify himself." *United Nuclear Corp.*, 1980-NMSC-094, ¶ 429. We therefore affirm the district judge's decision to deny Parents' motion for recusal.

**CONCLUSION**

**{26}** We affirm the district court.

**{27}  IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JULIE J. VARGAS, Judge**

**BRIANA H. ZAMORA, Judge**